1546

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESRERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-35 |
| | ) | (18 U.S.C. § 371 and 26 U.S.C. § 7206(1)) |
| JOSEPH W. NOCITO | ) | |

**INDICTMENT**

COUNT ONE

The grand jury charges:

INTRODUCTION

**FILED**

FEB 13 2018

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

1.      At all times material to this Indictment:

a.      The defendant, JOSEPH W. NOCITO (hereafter, NOCITO), a resident in Bell Acres, Sewickley, Pennsylvania, was the President and CEO of Automated Health Systems, Inc. (AHS), and effectively controlled the personnel, finances and operations of AHS.

b.      AHS was a Pennsylvania corporation with an office located in the Western District of Pennsylvania at Automated Health Systems, 300 Arcadia Court, Pittsburgh, Pennsylvania (Arcadia Court).   AHS was a health services management company that administered public health programs for state and local governments, including Illinois, Wisconsin, Ohio, Florida and West Virginia.

c.      Automated Health Systems, Inc. (AHS-DE) was a Delaware corporation with an office located at Arcadia Court.   NOCITO was an officer of AHS-DE and controlled the personnel, finances and operations of AHS-DE.

d.      NOCITO also owned and controlled both Pennsylvania and Texas business entities which were used by him to defraud the United States, namely: Automated Health Systems LLC (AHS-LLC); Donotti Properties, Inc. (Donotti); Palace Development Company, Inc.

(Palace); Northland Properties (Northland); Jonolley Properties, Inc. (Jonolley); Management Financial Services, Inc. (MFS); Golden Triangle Leasing Co., Inc. (GTL); and Nocito Enterprises, Inc. (Enterprises). Most of these entities used the same registered corporate address at Arcadia Court as AHS. These business entities, together with AHS-DE, entities are collectively referred to hereinafter as the "Nocito companies."

e.      Nocito companies such as Enterprises, Donotti, Palace, and Jonolley performed no significant business purpose, generated little to no independent revenue, and were funded primarily from payments from other Nocito companies. These Nocito companies were used by NOCITO and others to defraud the Internal Revenue Service (IRS).

f.      Conspirator Ann E. Harris (hereafter, Harris), (not a defendant herein), served as the bookkeeper for the Nocito companies, and, at the direction of NOCITO, handled accounts receivable, payroll, and other bookkeeping duties.

g.      Conspirator "CFO" was the Chief Financial Officer of AHS (hereafter, CFO), (not a defendant herein) and assisted in the preparation of tax returns for the Nocito companies.

<u>THE CONSPIRACY AND ITS OBJECTS</u>

2.      Beginning in and around July, 2005, and continuing thereafter until in and through April, 2013, in the Western District of Pennsylvania and elsewhere, the defendant, JOSEPH W. NOCITO, did knowingly and willfully combine, confederate, conspire, and agree with Harris and CFO, and others both known and unknown to the grand jury (or sometimes hereafter, Conspirators):

a.     To defraud the United States by impairing, impeding, obstructing and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment and collection of the revenue, to wit, income taxes, in two principal ways:

1.     By fraudulently characterizing millions of dollars expended in the construction of the personal residence and in personal expenses of NOCITO as ordinary and necessary business expenses on Nocito companies' ledgers, which NOCITO and Conspirators later claimed and deducted on Nocito company federal tax returns, and failed to report on NOCITO personal income tax returns; and

2.     By regularly shuffling and concealing millions of dollars in untaxed profits of AHS to AHS-DE and other Nocito companies, which in turn, paid little to no federal income tax on the profits.

b.     To file false and fraudulent federal income tax returns, in violation of Title 26, United States Code, Section 7206(1).

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

<u>The Fraudulent Classification of NOCITO'S Personal Expenses</u>

3.     It was a part of the conspiracy that NOCITO determined to expend millions of dollars in personal income in the construction of his personal residence, and for personal and family expenses, and to fraudulently deduct the expenses as ordinary and necessary business expenses through Nocito companies.

4.     It was further a part of the conspiracy that NOCITO expended millions of dollars in untaxed personal income in the construction of a 39,000 sq. ft. personal residence located in Bell Acres, Sewickley, Pennsylvania, which NOCITO referred to as "*Villa Noci*."

5.     It was further a part of the conspiracy that NOCITO and Conspirators falsely and fraudulently classified and then deducted as business expenses of various Nocito companies, the construction costs for *Villa Noci*, including expenditures for, among other things, the design, excavation, electrical, plumbing, flooring, furnishings, and amenities such as a pool, a playground, and tennis courts.

6.     It was further a part of the conspiracy that NOCITO caused contractors and suppliers to submit invoices for the construction costs of *Villa Noci* to Arcadia Court where the invoices were received by Harris.

7.     It was further a part of the conspiracy that NOCITO directed Harris to provide him the *Villa Noci* contractor and supplier invoices for his review.

8.     It was further a part of the conspiracy that upon his review of the *Villa Noci* contractor and supplier invoices, NOCITO directed Harris to fraudulently categorize *Villa Noci* construction expenses in various Nocito company Peachtree accounting ledgers as ordinary and necessary business expenses of the Nocito companies (hereafter, ledgers).

9.     It was further a part of the conspiracy that NOCITO and Harris fraudulently entered into ledgers and falsely classified *Villa Noci* construction expenses under expense account categories such as "Consulting," "Repairs and Maintenance," or other categories, which entries falsely represented that the payments to the contractors were ordinary and necessary business expenses of the Nocito companies.

10.     It was further a part of the conspiracy that NOCITO and Conspirators fraudulently processed payments of the construction invoices through the Nocito companies identified by NOCITO, which payments were issued by company check drawn against the respective Nocito company bank account.

4

11.     It was further a part of the conspiracy that NOCITO paid the builder of *Villa Noci* a monthly payment which NOCITO and Conspirators characterized as "consulting services" on Nocito company ledgers, which NOCITO and Conspirators then fraudulently expensed as an ordinary and necessary business expense on Nocito company ledgers.

12.     It was further a part of the conspiracy that NOCITO caused employees of the *Villa Noci* home builder to appear to be "employees" of Northland, and to be paid wages from Northland, which NOCITO then fraudulently expensed as an ordinary and necessary business expense.

13.     It was further a part of the conspiracy that, as needed, NOCITO and Conspirators transferred and paid funds between and among Nocito companies and fraudulently characterized these transfers as loans to cover construction costs, and prepared fictitious loan documents, knowing that no debt service payments would be paid on the loans.

14.     It was further a part of the conspiracy that NOCITO and CFO fraudulently claimed and deducted *Villa Noci* construction costs and payments to the builder and "employees" as ordinary and necessary business expenses on Nocito company Form 1120 tax returns.

15.     It was further a part of the conspiracy that NOCITO and CFO prepared, filed, and assisted in the preparation and filing of false federal income tax returns for the Nocito companies, which returns falsely claimed *Villa Noci* construction costs as deductible ordinary and necessary business expenses of the Nocito companies.

16.     It was further a part of the conspiracy that NOCITO incurred lavish and substantial personal expenses for himself and his family which he also fraudulently expensed and deducted through Nocito companies, for example, personal expenses incurred for: (a) his personal butler, cook and landscaper at *Villa Noci*; (b) memberships at several country clubs; (c) private school

tuition for grandchildren; (d) payments on loans for his exotic car collection which included makes such as Jaguar, Maserati and Rolls Royce; (e) mortgage payments for family members; (f) auto and home liability insurance premiums; (g) home utilities; (h) real estate taxes; (i) food shopping; and (j) credit card payments, among other lifestyle expenses.

17.     It was further a part of the conspiracy that NOCITO and Conspirators fraudulently characterized these personal expenses in Nocito company ledgers as "Advertising," "Travel," "Interest," "Office Expense" or other expense categories.

18.     It was further a part of the conspiracy that NOCITO and CFO fraudulently claimed and deducted NOCITO's personal expenses on Nocito company Form 1120 corporate tax returns.

19.     It was further a part of the conspiracy that NOCITO and CFO then prepared, filed, and assisted in the preparation and filing of false federal income tax returns for Nocito companies, which returns falsely claimed NOCITO's personal and family expenses as deductible ordinary and necessary business expenses of the Nocito companies.

20.     It was further a part of the conspiracy that NOCITO and CFO prepared, filed, and assisted in the preparation and filing of false personal income tax returns for NOCITO, which returns failed to truthfully report NOCITO's true gross personal income, and which resulted in millions of dollars in unpaid personal income tax owed to the IRS.

MANNER AND MEANS

Fraudulent Concealment of AHS Profits

21.     It was further a part of the conspiracy that NOCITO and CFO agreed to annually artificially reduce the taxable income of AHS, and Nocito companies, by deceptively paying or "shuffling" millions of dollars in untaxed profits of AHS to Nocito companies such as AHS-DE, GTL, MFS and Northland (collectively hereafter referred to as "upper tier" Nocito companies).

22.     It was further a part of the conspiracy that CFO routinely provided NOCITO with AHS monthly financial statements, which included AHS profit figures.

23.     It was further a part of the conspiracy that during, and frequently near the end of, the fiscal year NOCITO and Conspirators made payments of millions of dollars which consisted of untaxed profits of AHS to the upper tier Nocito companies.

24.     It was further a part of the conspiracy that NOCITO and CFO fraudulently categorized, and caused to be fraudulently categorized these payments as either "management fees", "administrative fees", "data processing" or "rent" expenses of AHS in its ledgers.

25.     It was further a part of the conspiracy that after certain payments to the upper tier Nocito companies, NOCITO and CFO further shuffled and concealed remaining untaxed profits further down to other Nocito companies such as Enterprises, Jonolley, and Palace (hereafter collectively referred to as "lower tier" Nocito companies).

26.     It was further a part of the conspiracy that NOCITO and CFO also falsely characterized these payments by the upper tier Nocito companies to the lower tier Nocito companies in ledgers as "loans," or as "management," "administrative" and "consulting" expense payments.

27.     It was further a part of the conspiracy that NOCITO and conspirators also used these untaxed AHS profits to fraudulently pay for NOCITO's *Villa Noci* construction, and his personal and family expenses.

28.     It was further a part of the conspiracy that to further disguise taxable events, NOCITO and CFO created and used different fiscal year end dates for AHS and Nocito upper and lower tier companies which facilitated and shielded the income shuffle, and evaded the yearly assessment and payment of taxes of the Nocito companies.

29.     It was further a part of the conspiracy that NOCITO and CFO prepared and filed, and caused to be prepared and filed, false federal tax returns that significantly underreported taxable income and tax owed to the IRS by AHS, and by the upper and lower tier Nocito companies as a result of the shuffling of profits to and between AHS and the Nocito companies.

OVERT ACTS

Fraudulent Concealment of AHS Profits

30.     In furtherance of the conspiracy, and to effectuate the objects of the conspiracy, the defendant, JOSEPH W. NOCITO and Conspirators, committed, and caused to be committed, the following overt acts, among others, in the Western District of Pennsylvania and elsewhere:

a.      In June, 2008, NOCITO made, and caused to be made, payments of approximately $8.8 million dollars in untaxed profits from AHS to AHS-DE, which NOCITO and Conspirators fraudulently categorized as "administrative fees" on AHS ledgers, and later deducted on a false AHS Form 1120 tax return;

b.      Between May, 2008, and February, 2009, AHS-DE made payments of approximately $9.155 million dollars in untaxed AHS profits to Enterprises, which NOCITO and Conspirators fraudulently categorized as "management fees" on AHS-DE ledgers, and later deducted on a false AHS-DE Form 1120 tax return;

c.      Between on or about September 22, 2009, and on or about September 30, 2009, NOCITO made, and caused to be made, payments of approximately $2.975 million dollars in untaxed AHS profits from Enterprises to Jonolley, which NOCITO and Conspirators fraudulently characterized as a "consulting expense" on the Enterprises ledger, and later deducted on a false Enterprises Form 1120 tax return;

     d.     Between on or about July 14, 2010, and on or about August 5, 2010, NOCITO paid, and caused to be paid, approximately $3.475 million dollars in untaxed AHS profits from Jonolley to Palace, which NOCITO fraudulently characterized as "consulting fees" on the Jonolley ledger, and later deducted on a false Jonolley Form 1120 tax return;

     e.     Between on or about January 4, 2011, and on or about February 28, 2011, NOCITO and Conspirators paid approximately $3.171 million dollars in untaxed AHS profits from Palace back to Jonolley, which payments NOCITO fraudulently characterized as "consulting fees" in Palace ledgers;

     f.     Between tax years 2006 and 2012, NOCITO and CFO prepared and filed, and caused to be prepared and filed, false federal income tax returns for AHS, as well as for upper tier and lower tier Nocito companies, which returns claimed false deductions and underreported taxable income and tax due;

     g.     On or about the following dates, NOCITO and CFO caused to be filed the following false AHS federal Form 1120 corporate income tax returns which failed to report all profits earned by AHS, and therefore underreported taxable income:

| Tax Return | Date Filed |
| --- | --- |
| Form 1120 | March 18, 2007 |
| Form 1120 | December 3, 2007 |
| Form 1120 | December 8, 2008 |
| Form 1120 | December 29, 2009 |
| Form 1120 | December 3, 2010 |
| Form 1120 | January 24, 2012 |

OVERT ACTS

Fraudulent Expenses

31.      In furtherance of the conspiracy, and to effectuate the objects of the conspiracy, the

defendant, JOSEPH W. NOCITO, and Conspirators committed, and caused to be committed, the

following overt acts, among others, in the Western District of Pennsylvania, to wit, on or about the

dates listed below, and in the approximate listed amounts, NOCITO and others fraudulently

categorized the following personal expenses of NOCITO as ordinary and necessary business

expenses on the respective Nocito company ledgers:

### Jonolley Properties, Inc.

| Date | Check Amount | Vendor | Expense Category |
|---|---|---|---|
| 2/27/06 | $84,477 | Astorino | consulting |
| 3/17/06 | $94,390 | Boswell Lumber | consulting |
| 10/29/07 | $10,000 | Hunt Stained Glass | consulting |
| 5/5/08 | $237,000 | Aqua Pool | consulting |
| 10/6/08 | $22,325 | Bear of PA | consulting |
| 10/8/09 | $44,891 | Nelmark Elec. | consulting |
| 5/6/09 | $46,026 | H.E. Leuenberger | consulting |
| 5/21/09 | $63,350 | Kitchen and Bath Concepts | consulting |
| 5/29/09 | $4,439 | Bobby Rahal Motors | interest |
| 7/16/09 | $10,000 | Sewickley Academy | advertising |
| 3/23/11 | $2,828 | Ferrari Financial | travel |
| 9/1/12 | $4,620 | Clearview F.C.U. | interest |

### Palace Development Company, Inc.

| Date | Check Amount | Vendor | Expense Category |
|---|---|---|---|
| 8/25/08 | $24,408 | Custom Turf Inc. | development |
| 10/31/08 | $1,908 | Kenneth Lynch | consulting |
| 11/3/08 | $49,779 | Miller Thomas | consulting |
| 10/22/09 | $66,477 | Shields Asphalt | consulting |
| 9/14/10 | $24,819 | Don's Cement | development |
| 11/19/10 | $7,350 | Easy Access Electronics | development |
| 11/29/10 | $17,000 | A.V. | consulting |
| 10/31/11 | $1,235 | Parkledge Excavating | development |
| 1/20/12 | $1,952 | Northern Home | repairs and maintenance |
| 5/23/12 | $1,470 | Aqua Pool | repairs and maintenance |
| 6/18/12 | $3,792 | Easy Access Electronics | repairs and maintenance |
| 7/18/12 | $22,545 | Ed Cress | repairs and maintenance |

**Nocito Enterprises, Inc.**

| Date | Check Amount | Vendor | Expense Category |
|------|-------------|--------|------------------|
| 10/30/07 | $1,349 | J.S. | travel |
| 11/26/07 | $1,238 | Chubb Ins. | interest |
| 1/22/08 | $1,137 | S.P. | travel |
| 4/1/08 | $11,500 | Ed Cress | consulting |
| 5/13/08 | $3,300 | Stick With it Fitness | advertising |
| 7/16/09 | $10,000 | Sewickley Academy | advertising |
| 11/9/09 | $3,609 | Hepatica | travel |
| 6/28/10 | $1,872 | B&J Golf carts | advertising |
| 12/07/10 | $2,776 | Maserati | interest |
| 1/1/2012 | $5,231 | Glenwood Management | rent |

**Northland Properties**

| Date | Check Amount | Vendor | Expense Category |
|------|-------------|--------|------------------|
| 1/12/07 | $29,800 | Rocks n' Stuff | landscape |
| 7/27/09 | $5,679 | Duquesne Light | utilities |
| 7/16/12 | $10,200 | August Vernon | Arcadia-repairs |
| 10/5/12 | $4,285 | Edgeworth Municipal | Villa Noci-utilities |
| 11/2/12 | $3,765 | Ed Cress | subcontract labor |

32. On or about the following dates, the defendant, JOSEPH W. NOCITO, and CFO, filed, and caused to be filed, the following Form 1120 corporate income tax returns, which returns falsely reported and claimed personal expenses of NOCITO, as ordinary and necessary business expenses, as well as concealed untaxed AHS profits.

| Tax Return | Date Filed |
|------------|-----------|
| Palace Form 1120 | December 1, 2008 |
| Palace Form 1120 | August 21, 2009 |
| Palace Form 1120 | May 15, 2010 |
| Palace Form 1120 | November 22, 2011 |
| Jonolley Form 1120 | February 25, 2009 |
| Jonolley Form 1120 | November 15, 2009 |
| Jonolley Form 1120 | November 15, 2010 |
| Jonolley Form 1120 | December 12, 2011 |
| Enterprises Form 1120 | December 21, 2009 |
| Enterprises Form 1120 | December 15, 2010 |
| Enterprises Form 1120 | June 4, 2012 |
| Enterprises Form 1120 | December 17, 2012 |

33.     On or about the following dates, the defendant JOSEPH W. NOCITO and CFO, filed, and caused to be filed, the following Form 1040 personal income tax returns, which returns falsely underreported the total income of NOCITO by failing to include as income the amounts related to the fraudulently expensed *Villa Noci* construction costs and other personal expenses.

| Tax Return | Date Filed |
|---|---|
| 2008 Joseph W. Nocito Form 1040 | April 15, 2009 |
| 2009 Joseph W. Nocito Form 1040 | April 15, 2010 |
| 2010 Joseph W. Nocito Form 1040 | April 15, 2011 |
| 2011 Joseph W. Nocito Form 1040 | April 15, 2012 |

In violation of Title 18, United States Code, Section 371.

## COUNT TWO

The grand jury further charges:

On or about November 22, 2011, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, willfully made and subscribed to a 2010 Form 1120 tax return for a corporation called Palace Development Company, Inc., which tax return falsely reported and claimed, among other material falsehoods: repairs and maintenance expense on line 14 of approximately $44,325; rents expense on line 16 of approximately $24,412; advertising expense on line 22 of approximately $14,438; other deductions on line 26 of approximately $237,310; and total deductions on line 27 of approximately $331,390, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

<u>COUNT THREE</u>

The grand jury further charges:

On or about November 15, 2010, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a 2009 Form 1120 tax return for a corporation called Jonolley Properties, Inc., which tax return falsely reported and claimed, among other material falsehoods: repairs and maintenance expense on line 14 of approximately $73,032; rents expense on line 16 of approximately $54,000; interest expense on line 18 of approximately $59,808; advertising expense on line 22 of approximately $34,494; other deductions on line 26 of approximately $4,578,723; and total deductions on line 27 of approximately $4,800,057, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

COUNT FOUR

The grand jury further charges:

On or about December 12, 2011, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a 2010 Form 1120 tax return for a corporation called Jonolley Properties, Inc., which tax return falsely reported and claimed, among other material falsehoods: repairs and maintenance expense on line 14 of approximately $34,935; interest expense on line 18 of approximately $222,035; advertising expense on line 22 of approximately $43,327; other deductions on line 26 of approximately $795,371; and total deductions on line 27 of approximately $1,112,289, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

COUNT FIVE

The grand jury further charges:

On or about December 15, 2010, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a 2009 Form 1120 tax return for a corporation called Nocito Enterprises, Inc., which tax return falsely reported and claimed, among other material falsehoods: salaries and wages expense on line 13 of approximately $542,411; rents expense on line 16 of approximately $787,037; interest expense on line 18 of approximately $529,284; advertising on line 22 of approximately $118,752; other deductions on line 26 of approximately $11,531,308; and total deductions on line 27 of approximately $13,931,152, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT SIX

The grand jury further charges:

On or about June 4, 2012, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a 2010 Form 1120 tax return for a corporation called Nocito Enterprises, Inc., which tax return falsely reported and claimed, among other material falsehoods: salaries and wages expense on line 13 of approximately $688,167; rents expense on line 16 of approximately $162,563; interest expense on line 18 of approximately $288,004; advertising expense on line 22 of approximately $38,200; other deductions on line 26 of approximately $1,107,812; and total deductions on line 27 of approximately $2,726,049, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

<u>COUNT SEVEN</u>

The grand jury further charges:

On or about December 17, 2012, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a federal income tax return which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which was not true as to every material matter, to wit, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a 2011 Form 1120 tax return for a corporation called Nocito Enterprises, Inc., which tax return falsely reported and claimed, among other material falsehoods: salaries and wages expense on line 13 of approximately $317,959; rents expense on line 16 of approximately $50,272; other deductions on line 26 of approximately $149,875; and total deductions on line 27 of approximately $699,512, whereas, in truth and in fact, as the defendant then and there well knew and believed, these statements of deductions were false.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT EIGHT

The grand jury further charges:

On or about April 15, 2011, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe to a U.S. Individual Income Tax Return (Form 1040) for the calendar year 2010 which was verified by a written declaration that it was made under the penalties of perjury, and which return was filed with the Internal Revenue Service, which tax return the defendant did not believe to be true and correct as to every material matter, in that, the return falsely reported on line 22 total income of $4,404,258, which the defendant as he then and there well knew and believed was false because it did not include as income, amounts related to the fraudulently expensed *Villa Noci* construction costs and other personal expenses.

In violation of Title 18, United States Code, Section 7206(1).

## COUNT NINE

The grand jury further charges:

On or about April 15, 2012, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe a U.S. Individual Income Tax Return (Form 1040) for the calendar year 2011 which was verified by a written declaration that it was made under the penalties of perjury, and which return was filed with the Internal Revenue Service, which tax return the defendant did not believe to be true and correct as to every material matter, in that, the return falsely reported on line 22 total income of $7,910,592, which the defendant as he then and there well knew and believed was false because it did not include as income, amounts related to the fraudulently expensed *Villa Noci* construction costs and other personal expenses.

In violation of Title 18, United States Code, Section 7206(1).

## COUNT TEN

The grand jury further charges:

On or about April 15, 2013, in the Western District of Pennsylvania, the defendant, JOSEPH W. NOCITO, did willfully make and subscribe a U.S. Individual Income Tax Return (Form 1040) for calendar year 2012 which was verified by a written declaration that it was made under the penalties of perjury, and which return was filed with the Internal Revenue Service, which tax return the defendant did not believe to be true and correct as to every material matter, in that, the return falsely reported on line 22 total income of $17,386,265, which the defendant as he then and there well knew and believed was false because it did not include as income, amounts related to the fraudulently expensed *Villa Noci* construction costs and other personal expenses.

In violation of Title 18, United States Code, Section 7206(1).

A True Bill,

Foreperson

SCOTT W. BRADY
United States Attorney
PA ID No. 88352