IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 18-CR-35 |
| v. | HONORABLE JOY FLOWERS CONTI |
| JOSEPH W. NOCITO | |

NOCITO ENTERPRISES, INC., PALACE
DEVELOPMENT COMPANY, INC., AND
JONOLLEY PROPERTIES, INC.,

Movants,

v.

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM OF LAW IN SUPPORT OF RULE 41(g) MOTION OF NOCITO ENTERPRISES, INC., PALACE DEVELOPMENT COMPANY, INC. AND JONOLLEY PROPERTIES, INC. FOR RETURN OF SEIZED PROPERTY

PHILLIP P. DILUCENTE
NICOLE D. NINO
PHIL DILUCENTE AND ASSOCIATES
310 Grant Street | Suite 1801
Grant Building
Pittsburgh, PA 15219
T: (412) 281-5005 | F: (412) 471-7445
phil@getphil.com
nicole@getphil.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

TABLE OF EXHIBITS ....................................................................... v

OVERVIEW .......................................................................................... 1

FACTUAL BACKGROUND .................................................................. 2

   Overview of the IRS Audit and Related Developments .......................... 2

   Mobilization of the IRS and Justice Department prosecutorial forces ............... 8

   The attorney-client relationships involving the movants and privileged information sharing arrangements .......................................... 10

   The movants' attorney-client relationships and the joint-client relationship ..... 11

      Leech Tishman, et al. .............................................................. 11

      Louis A. Prosperi, Esq. ............................................................ 13

   The community-of-interest relationship ................................................ 14

      Stanton D. Levenson, Esq. ...................................................... 14

      Mr. Sundo's roles in the privileged information-sharing arrangements ..... 14

   Mr. Sundo's covert information providing activities before the April 30, 2013 execution of the search warrant ................................................. 15

    After the execution of the search warrant in April, 2013 ...................... 17

   Before October, 2018, the "taint team" dealt only with documents seized during the execution of the search warrant, not with Exhibit J .......................... 18

   The prosecutors' use of Exhibit J before the grand jury and disclosure of their use of confidential information ................................................ 20

ARGUMENT ....................................................................................... 21

I. The Government's Acquisition and Use of Exhibit J Violated the Rights of Nocito Enterprises, Inc., Palace Development Company, Inc. and Jonolley Properties, Inc. to Confidential Communications with Their Attorneys and to the Exclusive Use and Control of their Privileged Communications ................ 21

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

A.  Exhibit J is protected from disclosure by the attorney-client privilege
and by privileged information sharing arrangements.................................22

1.  The attorney-client privilege of Nocito Enterprises, Inc., Palace
Development Company, Inc., and Jonolley Properties, Inc. protects
Exhibit J from disclosure ...........................................................................22

2.  Additionally, arising from a valid co-client relationship and a valid
community-of-interest arrangement involving each of the entities
and Mr. Nocito individually, Exhibit J is protected from disclosure.........23

B.  The entities and the privileged information sharing arrangement
participants control the privileged information, and they did not
waive their privileges.....................................................................................24

II. An Appropriate Remedy Here Includes Return of Exhibit J but also a
Prohibition on Any Use, Direct or Indirect, of Information Derived
from it ................................................................................................................27

A.  Under Rule 41(g), Nocito Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties, Inc. are entitled to the
return of Exhibit J............................................................................................27

B.  Injunctive relief is appropriate to prohibit the government from any
use, whether direct or indirect, of the confidential information derived
from Exhibit J...................................................................................................28

1.  Injunctive relief is a needed equitable remedy here .....................................29

a.  The government's intrusion into the movants' confidential attorney-
client communications caused them irreparable harm. ...............................30

b.  Legal remedies are inadequate to compensate for the injury.....................31

c.  The balance of hardships favors Nocito Enterprises, Inc., Palace
Development Company, Inc., and Jonolley Properties, Inc. .......................32

d.  The public interest would not be disserved by the injunctive relief
sought here. ....................................................................................................33

2.  The proper remedial measures required here include the return of
Exhibit J, a prohibitory injunction, and a Rule 502(d) "non-waiver"
order ................................................................................................................34

III.   An Evidentiary Hearing is Necessary............................................................35

CONCLUSION .......................................................................................................36

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

42532\335715\223081614

## TABLE OF AUTHORITIES

**Cases**                                                                                         Page

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985) .......... 25, 26, 27

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................................. 32

*Fisher v. United States*, 425 U.S. 391 (1976) ................................................ 25

*In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir. 2000) .............................. 25, 26, 27

*In re O.P.M. Leasing Servs., Inc.*, 670 F.2d 383 (2d Cir. 1982) ........................ 26

*In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) ....... 33, 35, 36

*In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007) ............................ 28

*Klitzman, Klitzman and Gallagher v. Kent*, 744 F.2d 955 (3d Cir. 1984) ..................... 33

*Ross v. City of Memphis*, 423 F.3d 5963 (6th Cir. 2005) .................................. 27

*Trammel v. United States*, 445 U.S. 40 (1980) ............................................. 25

*Underhill Coal Min. Co. v. Hixon*, 438 Pa. Super. 219, 652 A.2d 343 (Pa. Super. 1994) ...................................................................................... 30

*United States v. Albinson*, 356 F.3d 278 (3d Cir. 2004) ............................... 34, 39

*United States v. Bein*, 214 F.3d 408 (3d Cir. 2000) .................................... 29, 31

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ................................................................................. 29

*United States v. Ghavami*, 882 F. Supp. 2d 532, 544 (S.D.N.Y. 2012) ....................... 26

*United States v. Neill*, 952 F. Supp. 834, 837 (D.D.C. 1997) ....................... 18

*United States v. Stewart*, Case No. 02-CR-396, 2002 WL 1300059 (S.D.N.Y. 2002) ............................................................................... 19

*United States v. Voight*, 89 F.3d 1050, 1068 (3d Cir. 1996) ........................... 39

*United States v. Wells Fargo Bank, N.A.*, 132 F.Supp. 3d 558 (S.D.N.Y. 2015) ........ 26

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ................................. 24, 25, 28

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

**Rules**

Fed.R.Cr.P. 41(g) ....................................................................................... 29

Fed. R. Evid. 502(d). ................................................................................ 36

Fed.R.Civ.P. Rule 65 ............................................................................... 38

**Miscellaneous**

17A Am. Jur. 2d Equity §10 (August 2019 update) .................................... 29

IRS Document 12722, National Fraud Program Standard Operating
    Procedures (Rev. 12-20-2016) ............................................................. 9

J. Townsend, L. Campagna, S. Johnson, S. Schumacher Tax Crimes
    (2008) at 7 ......................................................................................... 10

J. Wigmore, Evidence § 2290 (McNaughton rev. 1961) ......................... 24

Restatement (Third) of the Law Governing Lawyers §75(2) ................... 26

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

## TABLE OF EXHIBITS

Exhibit A    David Hickton letter to Stephen Misko of January 15, 2013

Exhibit B    P. DiLucente / R. Ridge letter to M. Houghton of July 19, 2016

Exhibit C    IRS Audit-Related Documents

    C-1    Letter to Bates, Barksdale, Ickert & Co. from Richard J. Straw of July 16, 2010, and IDR-1

    C-2    Comments of Revenue Agent Straw's on-the-job instructor, Jerome Wozniak, to Revenue Agent Straw on October 4, 2010 (excerpt) **(not used)**

    C-3    IDR-5 to AHS, Inc. dated October 8, 2010 **(not used)**

    C-4    Letter to Revenue Agent Straw from William A. Buck dated October 28, 2019 **(not used)**

    C-5    Comments of Revenue Agent Straw's on-the-job instructor, Jerome Wozniak, to Revenue Agent Straw on October 4, 2010 (excerpt)

    C-6    IDR 001 to AHS (Delaware) dated December 6, 2010

    C-7    Letter to Joe Nocito, President, Nocito Enterprises, Inc. from Richard J. Straw dated August 30, 2011

    C-8    IDR INT-07 to AHS dated November 1, 2010

    C-9    IDR DE-3 to AHS dated March 21, 2011

    C-10    Memorandum of William A. Buck to Richard Straw dated April 7, 2011

    C-11    Notice of Proposed Adjustment to AHS-Delaware dated June 2, 2011

    C-12    IDR Joe-1 to Joseph W. Nocito dated May 12, 2011

    C-13    IRS summons to West-Aircomm Federal Credit Union dated March 29, 2012; Letter reflecting 26 U.S.C. § 7602 request to Squire Sanders & Dempsey dated March 5, 2012

    C-14    Letter to Messrs. Wozniak and Straw from William A. Buck dated July 27, 2012

    C-15    Letter to William A. Buck from Richard J. Straw dated May 7, 2012 **(not used)**

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

C-16    Richard J. Straw document reflecting meeting on August 3, 2011 with Messrs. Buck, Yang and Prosperi **(not used)**

C-17    Letter to Richard J. Straw from William A. Buck dated December 15, 2010

C-18    IRS Form 2848 of Automated Health Systems, Inc. dated July 15, 2010

C-19    IRS Form 2848 of Automated Health Systems, Inc. dated August 19, 2010

C-20    IRS Form 2848 of AHS (Delaware) dated December 21, 2010;

C-21    IRS Form 2848 of Automated Health Systems, Inc. dated July 11, 2011

C-22    IRS Form 2848 of Joseph Nocito dated May 7, 2011

C-23    IRS Form 2848 of Management Financial Services, Inc. dated August 25, 2011

C-24    IRS Form 2848 of Nocito Enterprises, Inc. dated September 26, 2011

C-25    IRS Form 2848 of Northland Properties dated December 22, 2011

C-26    IRS Form 2848 of Northland Properties and Nocito Family LP as Tax Matters Partners of February 9, 2012

C-27    IRS Form 2848 Northland Properties (Consequential Adjustment) of February 23, 2012

C-28    Time Entry of Auditors

Exhibit D          IRS Criminal Referral and related documents

D-1     Application and Affidavit for Search Warrant of Andrew M. Zurovcik of about April 26, 2013 (excerpt)

D-2     Referral Report of Potential Criminal Fraud Cases initiated on July 2, 2012 (excerpt)

D-3     IRS Document 12722, National Fraud Program Standard Operating Procedures

D-4     Email message from M. Tonsell of July 3, 2012 at 9:55 a.m..

D-5     Email message from S. Harper to J. Turley of July 7, 2011 at 11:00 a.m.

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

|  | D-6 | Message from S. Harper to R. Straw, et al. of before August 15, 2011 |
|  | D-7 | Email message from S. Harper to R. Straw, et al. of August 17, 2012 at 12:49 p.m. |
|  | D-8 | Memorandum for J. Rookwood from S. Smith of August 14, 2012 |
|  | D-9 | Email message from S. Harper to R. Straw, et al. of unstated date |
|  | D-10 | Search Warrant Affidavit Excerpt regarding Cohen & Grigsby **(not used)** |
|  | D-11 | Application and Affidavit for Search Warrants **(not used)** |
| Exhibit E | | Examining Officer's Activity Report |
| Exhibit F | | Levine Lee letter to Judge Linares of January 20, 2017 **(not used)** |
| Exhibit G | | William A. Buck declarations |
|  | G-1 | Declaration of January 7, 2019 and its Exhibit A |
|  | G-2 | Declaration of September 19, 2019 and its Exhibits B, C, and D |
| Exhibit H | | Louis Prosperi Declaration of January 2, 2019 and its Exhibit A |
| Exhibit I | | Stanton D. Levenson Declaration of September 17, 2019 and its Exhibit A |
| Exhibit J | | Dennis Sundo message and attached general ledgers **(not used)** |
| Exhibit K | | "Key Points" and "Areas of Discussion" documents |
| Exhibit L | | D. Lew email to B. Verdream of October 26, 2018 at 1:03 p.m. |
| Exhibit M | | "Key points" and "Areas of Discussion" documents **(not used)** |
| Exhibit N | | Search and Seizure Warrant to 300 Arcadia Court **(not used)** |
| Exhibit O | | Search and Seizure Warrant to Storage Room **(not used)** |
| Exhibit P | | AUSA Bender's Letter to Mr. Nocito's Attorney, Phil DiLucente dated 5/31/19 **(not used)** |
| Exhibit Q | | AUSA Skirtich's letter to Mr. Nocito's Attorneys dated 3/21/19 **(not used)** |
| Exhibit R | | Internal Revenue Manual (I.R.M.) 9.4.9.3.1.2 **(not used)** |
| Exhibit S | | Cohen & Grigsby Invoices |
| Exhibit T | | Correspondence from Cohen & Grigsby in response to IDR |

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

OVERVIEW

Exhibit J is a document supplied to the government by its cooperating witness which invokes the advice of counsel provided to the movants. It is entitled to protection from disclosure under the attorney-client privilege and the work-product doctrine. The government ignored those protections and failed, for five years, to disclose to the defense its possession and use of Exhibit J. Then, while seeking the indictment by which the defendant was charged, the government not only introduced the document into the record before the grand jury, but it exacerbated the harm by questioning at least one witness, Dennis Sundo, about the exhibit and the legal advice it expressed. The privileged nature of Exhibit J is an undisputed fact. The government's use of that privileged document is another undisputed fact.

Mr. Sundo and the government interfered with movants' right to exclusive control of their confidential attorney-client communications. To undo this improper interference the movants seek this Court's order under Rule 41(g), Fed. R. Crim. P., directing the return of Exhibit J, prohibiting any use or exploitation of the movants' confidential communications, and determining that the unauthorized disclosure and use of their confidential communications is not to be considered a waiver of the attorney-client privilege or work-product protection.

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 1

FACTUAL BACKGROUND

### Overview of the IRS Audit and Related Developments

1.      Automated Health Systems, Inc., is a Pennsylvania corporation. It maintains an office at 300 Arcadia Court, 9370 McKnight Road in Pittsburgh. AHS's principal business activity is providing health insurance enrollment services to state and local governments. (Indictment, paragraph 1 (a-b)).

2.      Nocito Enterprises, Inc. is a Pennsylvania corporation. Its address is 300 Arcadia Court, 9370 McKnight Road, Pittsburgh, PA 15237. During the time relevant to the Indictment, it provided management, technical consulting, and other services.

3.      Palace Development Company, Inc. is a Texas corporation.  Its address is 300 Arcadia Court, 9370 McKnight Road, Pittsburgh, PA 15237. During the time relevant to the Indictment, it provided land development and other services.

4.      Jonolley Properties, Inc. is a Texas corporation. Its address is 300 Arcadia Court, 9370 McKnight Road, Pittsburgh, PA 15237. During the time relevant to the Indictment, it provided land development and other services.

5.      Dennis Sundo is licensed by the Pennsylvania State Board of Accountancy as a Certified Public Accountant. (Pennsylvania Licensing System Verification Service, available at https://www.pals.pa.gov (visited September 16,

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 2

42532\335715\223081614

2019)). Mr. Sundo worked at AHS from about 1992 (Exhibit D-1, Application and Affidavit for Search Warrants of Andrew M. Zurovcik, ¶ 12) until about August 2014. Mr. Sundo served as Secretary of AHS, and as its Chief Financial Officer. His duties in that latter role included performing administrative, financial, and risk management activities, including the preparation of the company's financial information and compliance activities. During the period of about July 2005 until about April 2013, Mr. Sundo participated in the preparation of federal income tax returns for AHS and related companies and Joseph Nocito, individually. (Indictment, ¶¶ 19, 20).

6.     On July 26, 2010, Internal Revenue Service Revenue Agent Richard J. Straw sent a letter to John Marzo, a certified public accountant for AHS who had prepared the entity's tax return for that year, advising that the corporation's fiscal year 2009 tax return had been selected for examination. (Exhibit C-1). The letter set a date, time and place for a first meeting and attached an Information Document Request (IDR) seeking, among other documents, the general ledger, payroll, audited financial statements, and depreciation schedule. (*Id.*).

7.     On July 15, 2010, Dennis Sundo in his capacity as corporate secretary, executed an IRS Power of Attorney authorizing E. Allen Bates and Mr. Marzo to represent AHS in the audit of the fiscal year 2009 tax return. (Exhibit C-18).

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 3

8.      On August 19, 2010, Mr. Nocito, as President of AHS, appointed two attorneys, Wesley Yang and William Buck, as representatives for AHS, in addition to Messrs. Marzo and Bates. (Exhibit C-19). The new Form 2848 left in place the representatives appointed by Mr. Sundo (*Id.*)

9.      Among other topics, Revenue Agent Straw examined relationships and transactions involving the various related parties such as management fees and lease payments, and Mr. Nocito individually. (An example is at Exhibit C-5). At different times during the examination, Revenue Agent Straw added additional years' returns of AHS and multiple years' returns of additional taxpayers (an example is at Exhibit C-6), including those of Mr. Nocito individually and those of certain of what the Indictment refers to as the Nocito companies. (Indictment ¶1(d); Exhibit C-7). The taxpayers' attorneys entered IRS powers of attorney for each of the affected taxpayers as Revenue Agent Straw added to the examination additional years' returns or new taxpayers. (Exhibit G-1, Buck Declaration ¶5; Exhibit H, Prosperi Declaration ¶5; Exhibits C-18 to C-28).

10.     At various times, Revenue Agent Straw sent IDRs seeking both documents or narrative explanations, or both, from the various taxpayers involved in the examination. (Examples are at Exhibits C-8 and C-9). The taxpayers responded to the IDRs, after consultations between counsel and client, either with narratives or documents or both. (Exhibit G-1, Buck Declaration ¶¶7,8; Exhibit H, Prosperi Declaration ¶8; an example is at Exhibit C-10).

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 4

11.     From about late May, 2011 the Internal Revenue Agent sent Mr. Buck Notices of Proposed Adjustment related to disallowances of various tax treatments claimed on certain of the entity returns, and invited the taxpayers' response. (Exhibit G-1, Buck Declaration ¶9; an example is at Exhibit C-11).

12.     In preparing the taxpayers' responses to the Notices of Proposed Adjustment in and after May 2011, Mr. Buck consulted with Mr. Sundo and Mr. Nocito. (Exhibit G-1, Buck Declaration ¶9). At about this time, Louis A. Prosperi, an attorney, commenced his representation of AHS and the related entities and Mr. Nocito individually. (Exhibit H, Prosperi Declaration ¶¶4,5,9; Prosperi Declaration Exhibit A). The attorneys took special care in advising Mr. Nocito and Mr. Sundo of the attorneys' evaluation of the relative strengths and weaknesses of the auditor's positions and the taxpayers' positions and in assuring that the attorneys and the clients were in accord as to the audit defense strategy. (Exhibit H, Prosperi Declaration ¶9).

13.     In about May 2011, Revenue Agent Straw expanded the examination to include Mr. Nocito's joint individual income tax return for 2009. (Exhibit C-12).

14.     On about May 12, 2011, Wesley Yang and William Buck and the law firm of Leech Tishman & Fuscaldo filed a Form 2848 - "Power of Attorney and Declaration of Representative" - identifying themselves and their law firm as counsel for Joseph W. Nocito and his spouse. (Exhibit C-22).

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 5

15.     Under penalty of perjury, Messrs. Buck and Yang declared in the Power of Attorney on May 10, 2011 that they were authorized Pennsylvania attorneys in good standing to practice before the IRS and were authorized to represent Mr. Nocito for tax matters arising from the personal income tax returns of Mr. Nocito for the years 2008 and 2009. Mr. Nocito signed the Power of Attorney. (Exhibit C-22).

16.     At all times during the attorneys' representation of each client in connection with the Examination, the attorneys interacted with Mr. Sundo, the CFO of AHS, and Mr. Nocito, the President of AHS and its affiliates. (Exhibit G-2, Buck Declaration of September 19, 2019, ¶1). The ultimate decision-maker on any substantive decision was Mr. Nocito. (*Id*.)  The clients were aware of their right to confidential communications with their attorneys and were very protective of their rights under the attorney-client privilege and similar protections. (*Id*.) As counsel to the taxpayers, the attorneys were not instructed to waive the privilege at any time during our representation. (*Id*.) To the contrary, when confronted with issues that implicated the attorney-client privilege, the attorneys were instructed to and did invoke the full protection of the privilege. (*Id*.)

17.     In spring 2012, Revenue Agent Straw issued summonses and information requests to service providers to AHS and certain of the Nocito companies, including attorneys providing legal services to AHS in connection

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

with its ordinary and necessary business operations. (Examples of two are at Exhibit C-13 and T). The summonses and information requests demanded the production of extensive productions of documents. In the case of the attorneys, the summonses and information requests required productions that would have intruded on confidential communications that are protected from disclosure such as the detail provided on invoices describing the services rendered for the clients. (Exhibit G-2, Buck Declaration of September 19, 2019, ¶2). While the agent would be entitled to see such material as is necessary to establish that the attorney services were ordinary and necessary business expenses within the meaning of §162(a) of the Internal Revenue Code, he was not entitled to see material disclosing privileged and confidential information about the legal services provided. (*Id.*). Consistent with the clients' instruction to maintain the attorney-client privilege and to protect privileged communications, Mr. Buck instructed all attorneys receiving summonses to assert the attorney-client privilege in response to the summonses and sent Mr. Sundo copies of the letters that Mr. Buck sent to the attorneys. (*Id.*; *See* copies of correspondence attached thereto as Exhibits B and C.) This prompted a number of conversations between Revenue Agent Straw and Mr. Buck. (*Id.*). In time they reached an accommodation under which the attorneys could submit information in response to the summonses so long as the material provided did not disclose privileged or protected information. (*Id*). Specifically, the attorneys were instructed to redact from their responses all

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 7

itemized descriptions of the services rendered, revealing only the amount of time spent and the amount billed in their responses to the summonses. (*Id.*) Mr. Buck gave those specific instructions to Mark May, Esquire, of Cohen & Grigsby. (*Id.*; Exhibit G-2, Declaration Exhibit C). After the clients approved of this approach, Mr. Buck instructed the attorneys to provide information consistent with the agreement Mr. Buck had reached with Revenue Agent Straw.(*Id.*). Mr. Buck believes the attorneys did so. Mr. May sent Mr. Buck a copy of his communication to Revenue Agent Straw, and it corresponded exactly with Exhibit G-2, Buck Declaration Exhibit D. (*Id.*)

18.     In the spring of 2012, Revenue Agent Straw effectively disappeared. Both Mr. Prosperi and Mr. Buck attempted on numerous occasions to communicate with Revenue Agent Straw to discuss the status of the audit. Neither the examining agent nor his colleague, Mr. Wozniak, responded to the attorneys' attempts to communicate. (Exhibit G-1, Buck Declaration ¶10; Exhibit H, Prosperi Declaration ¶10; Exhibit C-14).

### Mobilization of the IRS and Justice Department prosecutorial forces

19.     A Fraud Technical Advisor (FTA) is an IRS employee who "assist[s] in potential fraud development cases" and "serves as the cross-functional liaison/resource and local expert in criminal and civil fraud, advising compliance managers and employees on the interpretations of laws, policies and

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

procedures governing fraud." IRS Document 12722, National Fraud Program
Standard Operating Procedures (Rev. 12-20-2016) (Exhibit D-3, p. 1). The FTA
provides feedback in the form of a written plan of action to the compliance
employees on Form 11661, Fraud Development Recommendations
Examinations. (*Id.* at p. 5). This document, signed by the FTA and the
compliance employee and Group Manager, identifies the recommended steps
needed to develop the potential fraud. (*Id.*) Once the resulting inquiry establishes
firm indications of fraud and the case meets criminal referral criteria, the case
must be referred to Criminal Investigation. (*Id.* at p. 10.) This is accomplished by
completion of Form 2797, Referral Report of Potential Criminal Fraud Cases.
(*Id.*)

      20.     On July 7, 2011, Revenue Agent Straw, Mr. Wozniak, Mr. Turley,
who was Mr. Straw's supervisor, met with Susan Harper, an IRS Fraud Technical
Advisor. Ms. Harper provided advice on investigative measures to take and avoid.
(Exhibit D-5).

      21.     On or about July 2, 2012, Revenue Agent Straw filled out IRS
Form 2797, a Fraud Referral report. (Exhibit E, p. 35). The report identified the
taxpayer as Mr. Nocito, as to his Form 1040 for 2009 and other Nocito related
corporation returns. (Exhibit D-2).

      22.     Special Agent Andrew M. Zurovcik was assigned to the case the
next day. (Exhibit D-4).

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 9

23.     Revenue Agent Straw recorded 4.5 hours on July 5, 2012 and 2.0 hours on July 13, 2012 for discussing the case with IRS Criminal Investigations ("CI"). (Exhibit E, p. 35).

24.     By July 14, 2012, CI determined to accept the criminal referral. (Exhibit D-6).

25.     IRS CI "concludes an investigation by either (1) declining to pursue the matter further [or] (2) forwarding the matter to the Department of Justice Tax Division [f]or criminal prosecution or for further investigation by a grand jury." J. Townsend, L. Campagna, S. Johnson, S. Schumacher TAX CRIMES (2008) at 7.

26.     On August 17, 2012, the FTA reported to Revenue Agent Straw and others that "Grand Jury [investigation is] to be requested." (Exhibit D-7).

27.     On August 14, 2012, the acting special agent in charge of IRS CI's Pittsburgh Field Office reported to another IRS official that Mr. Nocito was under criminal investigation for the years 2006 through 2012. (Exhibit D-8).

28.     On November 5, 2012, the Department of Justice Tax Division approved the grand jury investigation. (Exhibit D-9).

### The attorney-client relationships involving the movants and privileged information sharing arrangements

Each of the movants enjoyed an attorney-client relationship in its own right with the Leech Tishman lawyers and with Louis Prosperi. Additionally, there

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

42532\335715\223081614

are two privileged information sharing arrangements at work here - the co-client relationship arising in the context of the civil issues raised by the audit and the community-of-interest arrangement relating to Mr. Nocito's individual exposures to criminal investigation.

### The movants' attorney-client relationships and the joint-client relationship

### Leech Tishman, et al.

29.     In about August 2010, Mr. Nocito engaged Wesley Yang and William Buck of the Pittsburgh law firm, Leach, Tishman, Fuscaldo & Lampl to assist AHS in connection with the audit of its fiscal year 2009 income tax return. (Exhibit G-1, Buck Declaration ¶3). For the period of August, 2010 until his resignation from AHS in about August, 2014, Mr. Sundo received at his office at 9370 McKnight Road invoices describing the professional services Messrs. Yang and Buck provided. (Exhibit G-1, Buck Declaration ¶12).

30.     The attorneys considered that in connection with the IRS's audit, they had been called upon to represent not only AHS, but also some of its related entities, and Mr. Nocito individually. (Buck Declaration ¶6; Prosperi Declaration ¶5). They treated each of the clients equally in regard to loyalty, communication and decision making. (*Id.*) Certain positions taken on the tax returns and certain of the adjustments proposed by Revenue Agent Straw had consequences for

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 11

42532\335715\223081614

certain of the entity tax returns. The clients consented to the joint client representation. (*Id.*).

31.     The clients represented by Mr. Buck were aware of the confidential nature of communications with their attorneys and the protections available under the attorney-client privilege and the work product doctrine. (Exhibit G-2, Buck Declaration ¶1). At no time did the clients provide Mr. Buck with informed consent to waive the attorney-client privilege. (*Id.*).

32.     The following documents reflect the co-client group as they appeared before the IRS in the Examination:

| Time | Evidence | Co-Client Added |
|------|----------|-----------------|
| 08/19/2010 | Buck Declaration, ¶3; Prosperi Declaration, ¶ 4; Ex. C 18, C-19 | AHS, Inc., 2008 |
| 12/12/2010 | Buck Declaration, ¶5; Prosperi Declaration, ¶ 4; Ex. C-20 | AHS (Delaware) |
| 05/07/2011 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C.-22 | Joseph W. Nocito and spouse, individually, 2008 & 2009 |
| 07/07/2011 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-21 | AHS, Inc. 2008, 2009 and 2010 |
| 08/25/2011 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-23 | Management Financial Services, Inc. |
| 09/21/2011 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-24 | Nocito Enterprises, Inc. |
| 12/22/2011 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-25 | Northland Properties |
| 02/09/2012 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-26 | Northland Properties and Nocito Family LP as Tax Matters Partners |
| 02/23/2012 | Buck Declaration, ¶5; Prosperi Declaration, ¶4; Ex. C-27 | Northland Properties (Consequential Adjustment) |

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

33.     The attorneys communicated with one another and with Mr. Sundo and Mr. Nocito for the purpose of achieving the most advantageous outcome for each of the represented persons. (Exhibit H, Prosperi Declaration ¶6).

### Louis A. Prosperi, Esq.

34.     In late June 2011, after Revenue Agent Straw began sending the Notices of Proposed Adjustments, Messrs. Sundo and Nocito met with and hired Louis A. Prosperi to represent AHS, Inc. (Delaware) and any affiliated companies or individuals in connection with the Internal Revenue Service audit. (Prosperi Declaration ¶2). Thus, Mr. Prosperi and his colleagues were to act in concert with Messrs. Buck and Yang with regard to the audit, and Mr. Prosperi furnished Revenue Agent Straw with the required IRS Powers of Attorney. (Exhibit H, Prosperi Declaration ¶¶4, 5, 6).

35.     Mr. Prosperi provided professional assistance regarding the tax issues arising during the examination, including responding to the Notices of Proposed Adjustment. (Exhibit H, Prosperi Declaration ¶¶3, 6, 9).

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

### The community-of-interest relationship

### Stanton D. Levenson, Esq.

36.     In late June 2011, Stanford Levenson began his representation of Mr. Nocito. (Exhibit I, Levenson Declaration ¶2; Levenson Declaration Exhibit A).

37.     Mr. Levenson was the only attorney having professional responsibility for issues as to which Mr. Nocito individually might face criminal prosecution. (Exhibit I, Levenson Declaration ¶ 4).

38.     Mr. Levenson cooperated extensively with Messrs. Buck, Prosperi and Yang in exchanging confidential information regarding the civil and potential criminal features of the Examination. (Exhibit I, Levenson Declaration ¶ 6).

39.     The statements ascribed to the attorneys in Exhibit J are consistent with a portion of the legal advice provided by Mr. Levenson and the other attorneys to Mr. Nocito individually, and to Mr. Sundo and Mr. Nocito in their capacities as corporate officers or agents of the Nocito-related entities. (Exhibit I, Levenson Declaration ¶ 12).

### Mr. Sundo's roles in the privileged information-sharing arrangements

40.     Mr. Sundo served as an important source of information and advice for the parties involved in the audit. In response to inquiries from Revenue Agent Straw or the attorneys representing the taxpayers, or both, he provided

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

documents and oral explanations on matters relevant to the audit. (Exhibit G-1, Buck Declaration ¶8; Exhibit H, Prosperi Declaration ¶7).

41.     Throughout the active phase of the audit, Mr. Sundo discussed with the attorneys how to respond to Revenue Agent Straw's various requests for information and Mr. Sundo's gathering of documents responsive to Revenue Agent Straw's requests. (*Id.*) For example, in December 2010, Mr. Buck provided a letter to Revenue Agent Straw describing how AHS determined management and subcontractor fees. (Exhibit C-17). Mr. Sundo reviewed the draft letter and discussed the draft with Mr. Buck before it was provided to Revenue Agent Straw. (Exhibit G-1, Buck Declaration ¶8).

**Mr. Sundo's covert information providing activities before the April 30, 2013 execution of the search warrant**

42.     At a time now unknown to Mr. Nocito, Mr. Sundo hired an attorney, Stephen Misko. On January 15, 2013, the U.S. Attorney for the Western District of Pennsylvania wrote Mr. Misko to set "forth the full and complete terms of the agreement entered into between this office and your client, Dennis Sundo." (Exhibit A). Under the agreement, Mr. Sundo agreed to provide information to law enforcement personnel, and to provide all documents "which are relevant to the government's investigation [described as involving tax violations allegedly committed by Mr. Nocito and others] and which are in the possession of Dennis Sundo or under his control." The cooperation agreement

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 15

also obliged Mr. Sundo to assist agents in pursuing investigations...." For his part, the United States Attorney agreed not to use against Mr. Sundo any information disclosed by Mr. Sundo, and offered the prospect of a grant of statutory immunity before Mr. Sundo's appearance as a witness in grand jury proceedings or trial proceedings.

43.     In the agreement, the parties acknowledged that at his discretion, the U.S. attorney may apply for a formal grant of immunity for Mr. Sundo. (*Id.*)

44.     At a time now unknown to Mr. Nocito but not later than February 13, 2013, Mr. Sundo began covertly providing information to IRS representatives, including Special Agent Andrew Zurovcik, a law enforcement official employed by IRS CI. (Exhibit D-1, ¶ 12). The Special Agent met with Mr. Sundo on February 13, 2013, when Mr. Sundo delivered financial records of Nocito Enterprises, Inc., Palace Development Co., Inc., and Jonolley Properties, Inc. (*Id.*), without authorization and contrary to his obligations to those entities. Mr. Sundo covertly provided information on at least two other occasions in early 2013. (*Id.*).

45.     Exhibit J was one of the documents Mr. Sundo gave to Special Agent Zurovcik on February 13, 2013. (ECF No. 99, p. 6); (Exhibit L).

46.     Also among the documents Mr. Sundo provided on February 13, 2013 were the Cohen & Grigsby invoices (Exhibit S). Unlike the copies of the Cohen & Grigsby invoices Mr. May provided to Revenue Agent Straw in March,

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 16

2012, the copies of the Cohen & Grigsby invoices Mr. Sundo delivered in February, 2013 included the billing detail reflecting information protected from disclosure by the attorney-client privilege and the work-product protection (Ex. S).

47.     On about April 26, 2013 United States Magistrate Judge Robert C. Mitchell issued a warrant authorizing Special Agent Zurovcik to conduct a search at the AHS business premises. The Affidavit in support of Search Warrant (Exhibit D-1) indicates at ¶¶12 and 14 that Mr. Sundo delivered documents to the investigating agent. Magistrate Judge Mitchell issued the warrant after considering information provided by, Mr. Sundo, among others. (*Id.*)

**After the execution of the search warrant in April, 2013**

48.     On April 30, 2013, IRS agents executed the search warrant.

49.     Mr. Sundo continued his employment at AHS for more than 15 months after the execution of the search warrant until his resignation in about August 2014. Throughout this time, Mr. Sundo functioned as he had before the execution of the search warrant: as a source of information for the taxpayers' attorneys; as the corporate secretary and senior officer of AHS; and as a confidante to the attorneys' assessments and strategies. (Exhibit G-1, Buck Declaration ¶11; Exhibit H, Prosperi Declaration ¶13).

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 17

42532\335715\223081614

**Before October, 2018, the "taint team" dealt only with documents seized during the execution of the search warrant, not with Exhibit J**

50.     Use of a "taint team" allows limited review of arguably privileged material to determine whether privileged material was erroneously seized ancillary to the execution of the search warrant. *See*, U.S. Attorneys" Manual §13.420(E). A "taint team" consists of agents and attorneys not involved in the underlying investigation. (*Id.*) The "taint team" reviews the arguably privileged material to determine whether the records are protected by the attorney-client privilege. (*Id.*) The "taint team" takes care not to "disclose any information to the investigation/prosecution team unless and until so instructed by the attorney in charge of the [taint] team." (*Id.*) The idea is that the lawyers and agents on the "taint team" are walled off from the lawyers and agents on the prosecution team, "thereby assuring that the prosecution team remains free of the "taint" arising from exposure to potentially privileged material." *United States v. Neill*, 952 F. Supp. 834, 837 (D.D.C. 1997). The "taint team" communicates with defense attorneys to identify the respective parties' privilege positions; disputes are submitted to a judicial officer, *See*, U.S. Attorneys' Manual, §13.420(F); and only after resolution by the court are any documents disclosed to the trial team. *United States v. Stewart*, Case No. 02-CR-396, 2002 WL 1300059 (S.D.N.Y. 2002).

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

42532\335715\223081614

51.     On July 19, 2016, after having viewed copies of documents seized by the IRS during the execution of the search warrant, attorneys for Mr. Nocito and AHS, Inc. reported to the prosecutors that "some of the documents seized by the IRS are patently protected by the attorney-client privilege and/or the work product privilege." The attorneys noted the absence of references in the search warrant affidavit "to any 'taint team' protocol established by the prosecutors or the IRS." The attorneys advised that their clients have not and will not waive any privileges; and intend to assert and protect any applicable privileges and identified the attorneys who provided legal advice on documents that might have been seized. In closing, the attorneys requested that a "taint team" identify and segregate privileged documents; that the defense attorneys be permitted to review the segregated documents and confer with the "taint team" concerning documents believed by the defense lawyers to be privileged but not removed from the production to be provided to the trial team. (Exhibit B).

52.     On information and belief, it was only after the defense attorneys sent this letter that the government began any effort at taint review. At different times from July, 2016 to date, three assistant U.S. Attorneys have overseen the taint review, Rachel Dizard, David Lew and Paul Skirtich. After reviewing copies of material seized in the execution of the search warrant, the defense attorneys designated certain of the documents as subject to the attorney-client privilege or the work-product protection.

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

42532\335715\223081614

53.     As of this writing, the taint attorneys have not sought a court ruling on the defense privilege designations. The taint attorney has informed the prosecutor that Exhibit J embodies a communication protected from disclosure by the attorney-client privilege. (ECF No. 96, pp. 70-71).

**The prosecutors' use of Exhibit J before the grand jury and disclosure of their use of confidential information**

54.     On November 29, 2017, Mr. Sundo testified before the grand jury. (ECF No. 99, p. 6). In response to a question from the prosecutors, Mr. Sundo explained what Exhibit J was and read it into the record in its entirety. (*Id.*) Mr. Sundo also answered the prosecutor's question and discussed the legal advice given to Mr. Nocito (*Id.*).

55.     The packet of information that Mr. Sundo provided to government investigators on February 13, 2013, including Exhibit J, as well as other privileged documents, was not provided to the defense in discovery. (Transcript of Proceedings on May 8, 2019, ECF No. 96 p. 27)

56.     On September 20, 2018, the prosecutors furnished to Mr. Nocito's attorneys Mr. Sundo's cooperation agreement dated January 15, 2013. (Exhibit A).

57.     On October 18, 2018, Mr. Nocito filed Defendant's Motion for Disclosure of Confidential Informant Materials (ECF No. 45).

58.     After seeing the Motion, the prosecutor instructed Special Agent

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

Zurovcik to deliver Exhibit J to the "taint team." (ECF No. 96, p. 27).

59.     On October 26, 2018, AUSA David Lew telephoned Brandon Verdream, one of Mr. Nocito's attorneys. Mr. Lew said that he was about to send copies of records produced to Special Agent Zurovcik by Mr. Sundo on February 13, 2013. Later that day, Mr. Lew sent a zip file containing 13 documents. (Exhibit L). Among the 13 documents were what has come to be called Exhibit J and its attached ledger, and the Cohen & Grigsby invoices. In response to Mr. Lew's request, Mr. Verdream communicated his assertion of the attorney-client privilege to the documents.

60.     In its opinion of June 13, 2019, the Court determined that Exhibit J "clearly discloses legal advice given by attorneys." (ECF No. 99, p. 6 at n. 8). The Court determined that "[t]he government used "Exhibit J" during Sundo's appearance before the grand jury on November 29, 2017. The prosecutors asked Sundo what the document was and read it into the record in its entirety. They asked Sundo one follow-up question (consisting of seven lines of the transcript) about the legal advice given to Nocito." (ECF No. 99, p. 6).

## ARGUMENT

**I.      The Government's Acquisition and Use of Exhibit J Violated the Rights of Nocito Enterprises, Inc., Palace Development Company, Inc. and Jonolley Properties, Inc. to Confidential Communications with Their Attorneys and to the Exclusive Use and Control of their Privileged Communications**

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 21

Two distinct injuries stem from the government's possession and use of Exhibit J. One is the government's possession and use of the object that contains legal advice given to the movants by their attorneys. The other is the government's less tangible but equally harmful interference with the movants' rights to exclusive use and control of their confidential attorney-client communications. Each needs to be isolated, analyzed and remedied to provide the relief to which movants are entitled.

**A.      Exhibit J is protected from disclosure by the attorney-client privilege and by privileged information sharing arrangements**

There are two independent but related kinds of protected relationships at work here. The first is the attorney-client relationships between each of the movants and their attorneys. The second is the privileged information sharing relationships: the co-client relationship and the community-of-interest arrangement. Each of those relationships entitles Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. to enforce their rights to the return of Exhibit J.

1.      The attorney-client privilege of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. protects Exhibit J from disclosure

We start from the Court's determination in its opinion of June 13, 2019, that Exhibit J "clearly discloses legal advice given by attorneys." (ECF No. 99, *6 at n. 8). Exhibit J itself identifies Mr. Buck, Mr. Prosperi and Mr. Levenson as the

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

attorneys then representing these entities (and others) and recites Mr. Sundo's rendition of the attorneys' advice. Mr. Nocito and Mr. Sundo hired Mr. Prosperi to represent AHS, Inc. (Delaware) "and any affiliated companies or individuals in connection with the IRS audit. (Exhibit H, Prosperi Declaration, ¶2 and attached Exhibit A). Mr. Prosperi considered that in connection with the Audit, he and Messrs. Buck and Yang "had been called upon to represent not only AHS-Del, but also any affiliated entities, and Mr. Nocito individually." (Exhibit H, Prosperi Declaration, ¶5). Messrs. Prosperi, Buck and Yang "provided legal advice for each of the entities and Mr. Nocito individually as to issues arising in connection with the Audit." (*Id.* at ¶6). Further, the attorneys' powers of attorney for the various clients noted at ¶32, *supra*, and the IRS's recognition of the attorney representations as to Nocito Enterprises, Inc. provide additional support for the conclusion that Nocito Enterprises, Inc. was involved in the relevant attorney-client relationship. Under the circumstances here, it is abundantly clear that the legal advice in Exhibit J involved a confidential communication between the attorneys and Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc.

> 2.      Additionally, arising from a valid co-client relationship and a valid community-of-interest arrangement involving each of the entities and Mr. Nocito individually, Exhibit J is protected from disclosure.

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 23

Additionally, for the reasons set forth at pages 29-50 (using the numbers applied by the Pacer System in the Header) in the Memorandum in Support of Motions to Dismiss the Indictment, etc. (ECF No. 121), which we adopt and incorporate by reference, the information disclosed by Mr. Sundo was protected from disclosure by privileged information sharing arrangements.

**B.    The entities and the privileged information sharing arrangement participants control the privileged information, and they did not waive their privileges**

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing J. Wigmore, EVIDENCE § 2290 (McNaughton rev. 1961)). The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Fisher v. United States*, 425 U.S. 391, 403 (1976) (the purpose of the privilege is "to encourage clients to make full disclosure to their attorneys"). It exists not only to protect the communication of legal advice to the client, but "also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390.

Here, the privilege at issue is held by, and controlled by, Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. *See, Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 24

("It is by now well established . . . that the attorney-client privilege attaches to corporations as well as to individuals.") (citing *Upjohn*, 449 U.S. at 390). Corporate employees don't have the inherent authority to waive or forfeit the corporation's privilege. That may be accomplished only by the corporation, acting through its board of directors, senior officers, or other authorized persons who "must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Weintraub*, 471 U.S. at 349; *see also In re Grand Jury Proceedings*, 219 F.3d 175, 183-84 (2d Cir. 2000); *In re O.P.M. Leasing Servs., Inc.*, 670 F.2d 383, 386 (2d Cir. 1982) ("Where a corporate entity seeks legal advice, the attorney-client privilege belongs to the corporation alone"); *United States v. Wells Fargo Bank, N.A.*, 132 F.Supp. 3d 558 (S.D.N.Y. 2015); *United States v. Ghavami*, 882 F. Supp. 2d 532, 544 (S.D.N.Y. 2012) ("Once the privilege attaches . . . it may be waived only by someone with appropriate corporate decision making authority").

Mr. Sundo, of course, just like other Nocito-related entities employees, was involved with and privy to the regular communications necessary for the Nocito-related entities to seek and obtain corporate legal advice. (Exhibit G-1, Buck Declaration, ¶8; Exhibit H, Prosperi Declaration, ¶7). Yet that does not give him, or any other employee, a self-anointed authority to waive the privilege on behalf of the corporation. That prerogative rests with the entities alone. *See*

---

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

*Weintraub*, 471 U.S. at 349; *In re Grand Jury Proceedings*, 219 F.3d 175, 184-85 ("[I]t does not necessarily follow that a corporate officer testifying in his individual capacity can waive the corporate privilege without that entity's consent."); *Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) (holding "that a municipal official's assertion of the advice-of-counsel defense does not require the City to relinquish the privilege it holds").

As this Court recognized in its June 13, 2019 Order, Mr. Sundo lacked the authority to waive the entities' attorney-client privilege (ECF No. 99, p. 14 n.13). The privilege at issue here indisputably belongs to the entities, not Mr. Sundo. Based on the same principles articulated in the Second Circuit's decision in *In re Grand Jury* and the Sixth Circuit's decision in *Ross*, this Court should hold Mr. Sundo's unauthorized disclosures of protected information to be of no effect in waiving the protections accorded the Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. attorney-client communications. Holding otherwise would undermine the certainty of application and control demanded by the Supreme Court. *See Upjohn*, 449 U.S. at 393 ("[a]n uncertain privilege . . . is little better than no privilege at all").

Separately, under the principles governing co-client information sharing and community-of-interest information sharing, as set forth in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007) and the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §75(2), every party's consent to the Exhibit J

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 26

disclosures was required. Here, none of those parties consented, in plain violation

of their rights to confidentiality protection.

## II.   An Appropriate Remedy Here Includes Return of Exhibit J but also a Prohibition on Any Use, Direct or Indirect, of Information Derived from it

A Rule 41(g) motion is proper for any person aggrieved by an unlawful

seizure or by deprivation of property, not just parties to the criminal prosecution.

And when made by a person against whom no criminal charges have been

brought, a Rule 41(g) motion is properly regarded as a petition requesting the

district court invoke its civil equitable jurisdiction. *United States v. Bein*, 214 F.3d

408, 411 (3d Cir. 2000); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d

1162, 1172 (9th Cir. 2010) (en banc).

### A.   Under Rule 41(g), Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. are entitled to the return of Exhibit J

Rule 41(g) Fed.R.Cr.P., entitles "a person aggrieved by an unlawful search

and seizure of property or by the deprivation of property," to "move for the

property's return." The only applicable standard is reasonableness. Fed.R.Cr.P.

41(g), Advisory Committee notes to 1989 Amendments "([R]easonableness under

all of the circumstances must be the test when a person seeks to obtain the return

of property.)"

The papers belong to Nocito Enterprises, Inc., Palace Development

Company, Inc., and Jonolley Properties, Inc.; Mr. Sundo took them secretly and

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

without authorization and the government's possession and continued retention of Exhibit J is unreasonable. The entities are therefore entitled to the return of Exhibit J under Rule 41(g). As between the movants, which are the owners of Exhibit J, and the United States, which took possession of it from someone who took it without the owner's knowledge or consent, the movants have superior rights to Exhibit J. Pennsylvania recognizes that the original owner can maintain an action for conversion against any person, even an innocent third party, who takes possession of her goods without her permission *Underhill Coal Min. Co. v. Hixon*, 438 Pa. Super. 219, 652 A.2d 343 (Pa. Super. 1994). Restoring the owner to effective possession is the only reasonable course under the circumstances here.

### B.   Injunctive relief is appropriate to prohibit the government from any use, whether direct or indirect, of the confidential information derived from Exhibit J

At the simplest level, Exhibit J is a collection of several sheets of paper, some ink, and perhaps a steel staple. Return of the physical thing that is Exhibit J, while necessary, is not sufficient. Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. have an intangible property interest in their confidential communications with their attorneys. They alone had the right to the exclusive use of their attorneys' confidential advice. They alone had the right to decide how to use their confidential attorney-client communications.

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 28

42532\335715\223081614

They alone had the right to waive the attorney-client privilege, and the concomitant right to have any waiver of the privilege manifested only by the authoritative act of the corporation. Mr. Sundo's interference with the entities' right to the exclusive use and exclusive control of their confidential legal advice and the government's interference with those rights constitute deprivations of property that far exceed the simple remedy of return of the collection of papers that is Exhibit J.

       1.     Injunctive relief is a needed equitable remedy here

A non-party's Rule 41(g) motion should be treated as a civil proceeding for equitable relief. *United States v. Bein*, 214 F.3d 408 (3d Cir. 2000). We stress the importance of the Court's power to afford equitable relief because exercise of that power is essential here to fully vindicate the entities' rights to the exclusive use and control of their confidential attorney-client communications. "One of the maxims of equity is that equity regards as done that which ought to be done." 17A Am. Jur. 2d Equity §10 (August 2019 update). The government ought never to have interfered with Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc.'s exclusive rights in regard to their confidential attorney-client communications. It ought never to have pursued investigative strategies that were informed by the confidential communications in Exhibit J; it should never have presented Exhibit J to the grand jury in November, 2017; and it should never have asked Mr. Sundo about the confidential attorney advice

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

related to Exhibit J. Undoing as many of the injuries stemming from these various interferences is an essential aspect of doing here what "ought to be done."

In the exercise of its equitable jurisdiction, the court is empowered to issue an injunction that will afford the fullest relief possible under the circumstances. An appropriate remedy for the government interference with the entities' rights to the exclusive use and control of their confidential attorney-client information is one that prohibits any use of that information by the government.

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

        a.     The government's intrusion into the movants' confidential attorney-client communications caused them irreparable harm.

In *Klitzman, Klitzman and Gallagher v. Kent*, 744 F.2d 955 (3d Cir. 1984), a case involving an indiscriminate search of all of a law firm's files, the Third Circuit affirmed an order of injunctive relief commanding return of documents served under a search warrant; the Fourth Circuit has recently ruled similarly in a

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 30

strikingly similar case, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019). Admittedly, the facts in each case are extreme, but certain concepts recognized by both courts have direct pertinence here: that important legal principles protecting attorney-client relationships deserve significant weight (*Search Warrant*, at 175); that the attorney-client privilege promotes the broader public interest in the observance of law and administration of justice (*Klitzman*, 744 F.2d at 960; *Search Warrant* at 173); that documents within the scope of the privilege are to be "zealously protected" (*Klitzman*, 744 F.2d at 960); and that improper government intrusions on the attorney-client privilege can constitute irreparable harm. (*Klitzman*, 744 F.2d at 960; *Search Warrant* at 175).

Here, the compromise of the movants' confidential communications is just such an irreparable harm. No subpoena demanding Exhibit J could have been enforced; no motion to compel its production could ever have succeeded. Exhibit J's confidential communications should have been forever off-limits to government inspection and exploitation; that they weren't is a harm that can't be undone. The harms have occurred, are occurring, and, at the trial, are certain to recur absent injunctive relief from the Court.

      b.      Legal remedies are inadequate to compensate for the injury.

Quantifying Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc.'s injury in terms of money is difficult. And even

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 31

if it were possible, the Third Circuit considers monetary damages unavailable on a Rule 41(g) motion. *United States v. Albinson*, 356 F.3d 278 (3d Cir. 2004). Thus, legal remedies can't make Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. whole.

> c.   The balance of hardships favors Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc.

The balancing inquiry – hardship to Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. if relief is denied as compared to the hardship to the United States if it is granted – tips decidedly in favor of the entities. If the injunctive relief movants seek is denied, their right to protected attorney-client relationships vanishes. That right is of vital importance to them, as the Fourth Circuit so recently wrote in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019). We are not, at this juncture, able to carefully assess hardship to the United States should the injunctive relief sought be granted. What is abundantly clear, though, is that any legitimate hardship attributable to undoing the government's improper use of Exhibit J is a hardship it brought upon itself.

The choice is not between either respecting the Nocito-related entities' privileged information or allowing robust law enforcement investigation. Even the most casual reading of Exhibit J would have revealed its privileged character; and the trained eyes of the government officials seeing it would have recognized

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

at once that Exhibit J was, figuratively speaking, radioactive. The government had

no right to take and then use confidential information that is protected from

disclosure, so the entry of injunctive relief here would prejudice no legitimate law

enforcement interest. Yet the prejudice to the entities – which need to be able to

rely on the ability to seek and obtain legal advice on a confidential basis and to

control the confidentiality of the resulting advice – must also be considered and

weighed. Without meaningful injunctive relief, the movants' rights to protected

attorney-client relationships are no rights at all.

> d.    The public interest would not be disserved by the
>        injunctive relief sought here.

The critical role played by the attorney-client privilege in supporting the

integrity of the judicial system led the Fourth Circuit to conclude that upholding

the attorney-client privilege against government encroachments is in the public

interest. in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173-174 (4th Cir.

2019). For the very same reason, the injunctive relief sought here would serve the

public interest.

We acknowledge that the United States' interest in effective enforcement

of the criminal law is a rightful consideration. But time and again when

confronted with this particular clash of values, the Supreme Court has chosen the

significant benefits to the public interest from recognizing the primacy of

confidential attorney-client communications, as the cases cited in *Klitzman* reveal.

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

Page 33

We deal here with a greatly heightened privacy interest which prevails over legitimate law enforcement needs almost every time.

> 2.   The proper remedial measures required here include the return of Exhibit J, a prohibitory injunction, and a Rule 502(d) "non-waiver" order

Relief that returns the parties to a status approaching that which existed before the violation requires at least four elements: an order that Exhibit J be returned to the entities' attorneys; an injunction prohibiting the United States from any direct or indirect use of Exhibit J; an injunction directing Mr. Sundo not to disclose any information protected from disclosure by the attorney-client privilege or the work-product protection; and an order under the authority of Rule 502(d), Fed. R. Evid., that the disclosures effected by Mr. Sundo and Exhibit J not be regarded as a waiver in any proceeding.

We have addressed the first three kinds of appropriate relief, and they needn't be repeated again in this filing. The fourth, however, requires a brief elaboration.

Rule 502(d), F.R. Evid., authorizes a federal court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other state or federal proceeding." Mr. Sundo's disclosures in connection with his cooperation agreement with the U.S. Attorney, and to the grand jury, and anything in between or thereafter, are connected to this criminal case; they

Memorandum of Law in Support of
Rule 41(g) Motion of Nocito
Enterprises, Inc., Palace Development
Company, Inc., and Jonolley Properties,
Inc. for Return of Seized Property

occurred without the movants' awareness or authorization, and they ought not be considered a waiver of any confidentiality protection.

In addition to the risk that their confidential information might be disclosed in the current prosecution of Mr. Nocito, the movants face the risk that their confidential information could be disclosed in other proceedings. To cite but one, the IRS audit which led to the criminal investigation in this case has been administratively suspended during the pendency of this criminal case. No matter the result in this criminal case, the audit and related proceedings will one day resume. Information derived from Mr. Sundo's unauthorized disclosures of confidential information may reasonably be expected to be used in those proceedings. That possibility needs to be stymied by a Rule 502(d) order.

## III.   An Evidentiary Hearing is Necessary

Rule 41(g) directs that "The court must receive evidence on any factual issue necessary to decide the motion." Here, we know several of the primary facts, which themselves establish that the return of Exhibit J is reasonable, but a detailed inquiry into the facts surrounding the government's acquisition and use of Exhibit J is necessary to deciding the completeness of the injunctive relief movants seek. Context matters, and the full story of the genesis of Exhibit J and how the government came to acquire and then use Exhibit J needs to be uncovered. For these reasons, and those expressed at pages 71-74 (using the numbers applied in the header by the Pacer system) in Mr. Nocito's

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

Page 35

Memorandum of Law in Support of Defendant's Motions to Dismiss the Indictment, etc. (ECF No. 121), which the movants adopt and incorporate by reference, the Court should direct an evidentiary hearing on the subjects of this Rule 41(g) motion.

Whether to hold an evidentiary hearing on a Rule 41(g) motion is committed to the sound discretion of the district court, *United States v. Albinson*, 356 F.3d 278, 284 (3d Cir. 2004), but the Third Circuit plainly regards an evidentiary inquiry as the superior course to follow. (*Id.*). ("An evidentiary inquiry ensures that a district court has sufficient information to decide a Rule 41(g) motion."); *see also, United States v. Voight*, 89 F.3d 1050, 1068 (3d Cir. 1996).

An evidentiary hearing will aid the Court's observance of the mandates of Rule 65, Fed. R. Civ. P. that every injunctive and restraining order meet strict specificity requirements. Informed by a full fact hearing the Court will be in the best position  to make the findings of fact and conclusions of law explaining the reasons for issuance of injunctive relief (Rule 65(d)(1)(A), its specific terms Rule 65 (d)(1)(B), and describing in detail the conduct restrained or required (Rule 65(d)(1)(C).

## CONCLUSION

The deliberateness of the government's intrusion into the movants' confidential communications and the importance of protecting attorney-client relationships make reasonable the injunctive relief requested here. The movants

Memorandum of Law in Support of Rule 41(g) Motion of Nocito Enterprises, Inc., Palace Development Company, Inc., and Jonolley Properties, Inc. for Return of Seized Property

42532\335715\223081614

are rightly entitled to the return of Exhibit J and the prohibition of any

exploitation of it.

July 27, 2020                              Respectfully submitted,

                                          PHIL DiLUCENTE AND ASSOCIATES

                                          By:  /s/Phillip P. DiLucente
                                               One of the Attorneys for Movants,
                                               Nocito Enterprises, Inc., Palace
                                               Development Company, Inc.

PHILLIP P. DiLUCENTE
NICOLE D. NINO
PHIL DiLUCENTE AND ASSOCIATES
310 Grant Street | Suite 1801
Grant Building
Pittsburgh, PA  15219
T: (412) 281-5005 | F: (412) 471-7445
phil@getphil.com
nicole@getphil.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with Fed. R. Crim. P.

49(e), Fed. R. Civ. P. 5, LCvR 5.5 and LCvR 5.6, and the Court's Standing Order

on Electronic Case Filing Policies and Procedures, the following documents:

**MEMORANDUM OF LAW IN SUPPORT OF RULE 41(g) MOTION OF NOCITO ENTERPRISES, INC., PALACE DEVELOPMENT COMPANY, INC., AND JONOLLEY PROPERTIES, INC. FOR RETURN OF SEIZED PROPERTY**

were served on July 27, 2020, through the Court's ECF system as to ECF filers.

/s/Phillip P. DiLucente

PHILLIP P. DILUCENTE
NICOLE D. NINO
PHIL DILUCENTE AND ASSOCIATES
310 Grant Street | Suite 1801
Grant Building
Pittsburgh, PA  15219
T: (412) 281-5005 | F: (412) 471-7445
phil@getphil.com
nicole@getphil.com