IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
                                    )
              vs.                   )        Criminal No. 18-35
                                    )
JOSEPH W. NOCITO,                   )
                                    )
              Defendant.            )

OPINION

I.      Introduction

Pending before the court are numerous pretrial motions filed by defendant Joseph

W. Nocito ("Nocito") related primarily to his government misconduct theory (ECF Nos.

108, 110, 111, 112, 114).[1]  Nocito and the government submitted numerous briefs and

materials (ECF Nos. 116, 121, 133, 145, 147, 161, 162).  On July 20, 2021, the court heard

oral argument (Tr., ECF No. 231).[2]  After the argument, the court permitted supplemental

briefing.  The parties filed their additional materials (ECF Nos. 225, 226, 228, 238, 245,

249) and the motions are ripe for disposition.

II.     Factual and Procedural Background

Nocito, an accountant and former CPA, was the president and chief executive

officer ("CEO") of Automated Health Systems, Inc. ("AHS") and controlled some 35

related entities.  Nocito is charged in a 21-page indictment with:  one count of conspiracy

to defraud the United States in violation of 18 U.S.C. § 371, beginning in and around July

---

[1] Nocito's motion challenging the scope of the search warrant (ECF No. 107) will be
addressed in a separate opinion and order.
[2] The oral argument was delayed numerous times, at the request of the parties, due to the
Covid-19 pandemic and their desire that the argument take place in person.

2005 and continuing until in and around April 15, 2013 (Count One); and nine counts of filing false income tax returns in violation of 26 U.S.C. § 7206, including six counts of filing false corporate income tax returns (Counts Two through Seven) and three counts of filing false individual tax returns (Counts Eight through Ten).  Dennis Sundo ("Sundo") served as the secretary and chief financial officer ("CFO") of AHS until August 2014. The legal and factual issues raised in Nocito's pending motions have been the subject of extensive prior proceedings in this case.

A.  Nocito's motion for discovery

Nocito first raised the government misconduct theory in a motion for discovery (ECF No. 45).  In essence, Nocito alleged that the government, through its interactions with Sundo, deliberately intruded into Nocito's personal attorney-client privilege.  In support of his motion, Nocito submitted an unverified narrative and numerous documents under seal (ECF No. 46).  The court held a hearing on February 14, 2019.  (*See* Transcript, ECF No. 81).  At the conclusion of the hearing, the court requested supplemental briefing and agreed to perform an in camera review.

B.  The in camera review

In *United States v. White*, 879 F.2d 1509, 1513 (7th Cir. 1989) (involving similar allegations of government misconduct), the court of appeals suggested that the trial court review in camera the documents that the government obtained from the defendants' former attorney and the transcript of the attorney's grand jury testimony to determine whether a constitutional violation occurred.  *Id.*  In this case, the court conducted the in camera examination contemplated in *White*.  The government produced for in camera review thirteen documents that were provided by Sundo to government investigators on February

2

13, 2013, during his initial proffer session (the "Sundo documents").[3]  The court also reviewed in camera the transcript of Sundo's testimony before the grand jury on November 29, 2017.

The primary focus of Nocito's government misconduct argument is a document referred to by the parties as "Exhibit J."[4]  Exhibit J was the only document provided by Sundo to the investigators that arguably implicated an attorney-client privilege (ECF No. 99 at 17).  The court described Exhibit J in the June 13, 2019 opinion as follows:  "Undated, typed letter from Denny (Sundo) to Joe (Nocito), asking him to look at all expense categories, and stating:  "Consistent with what [attorneys] said, they do not want you to . . . ." (ECF No. 99 at 6).  The court concluded:

> This document clearly discloses legal advice given by attorneys.  The context, however, given Sundo's and Nocito's roles at AHS and the reference to "expense categories," is that **the legal advice was given to the corporation, not Nocito in his individual capacity**.  It appears that the legal advice may have been given to Sundo, to be passed on to Nocito.  Sundo is asking Nocito for approval to make a journal entry on the company books to charge off personal expenses.

*Id.* at n. 8 (emphasis added).

The actual text of Exhibit J was:  "Consistent with what Lou, Stan and Bill said . . ."  At the hearing on July 20, 2021, the court for the first time was advised that "Stan" is a reference to attorney Stanton Levenson ("Levenson"), who represented Nocito in his individual capacity, but did not represent the corporations.  The two other attorneys mentioned in Exhibit J ("Lou" [Prosperi] and "Bill" [Buck]) represented both the

---

[3] Nocito's criminal defense attorneys have reviewed these documents.  (ECF No. 96, Tr. at 15).
[4] (ECF No. 67, Ex. J, filed by Nocito under seal).  For clarity and consistency, the court will do likewise.

corporations and Nocito in his individual capacity.  Nocito's counsel assert that because "Stan" was referred to in Exhibit J, it should reflect advice given by Levenson to Nocito in his personal capacity.  Levenson, however, did not aver in his declaration (discussed below) that Exhibit J referenced his advice given separately to Nocito.  To the contrary, Levenson averred that he coordinated with the corporate counsel.  Levenson's declaration does not change the court's conclusion that Exhibit J reflects legal advice given to the corporations, not individually to Nocito.  Notably, the advice concerns deductions by the corporations for business expenses.  In other words, Nocito does not possess an individual attorney-client privilege with respect to Exhibit J.

The court concluded that the government's interactions with Sundo and use of Exhibit J with the grand jury did not support Nocito's claim of misconduct.  The court found that Exhibit J was voluntarily provided by Sundo to the investigators and that it was not a primary focus during the grand jury:  "The prosecutors asked Sundo what the document was and read it into the record in its entirety.  They asked Sundo one follow-up question (consisting of seven lines of the transcript) about the legal advice given to Nocito.  Tr. 32-33.  The questioning then moved on to another topic."  ECF No. 99 at 6.  The court summarized its findings in the June 13, 2019 opinion:

> Based upon the court's in camera review, there is no indication that the agents requested Sundo to obtain attorney-client privileged information at any time.  Exhibit J was voluntarily provided by Sundo to the investigators in his initial proffer session in February 2013.  There is no indication that the government was aware that Nocito was asserting an individual attorney-client privilege with the AHS attorneys or affirmatively attempted to invade Nocito's individual attorney-client privilege.  The grand jury transcript does not reveal any evidence that investigators used Sundo in an undercover capacity to wrongfully obtain confidential attorney-client communications.

ECF No. 99 at 6-7.

C.  The Levenson declaration

The only "new"[5] evidence identified by Nocito as support for the pending motions is a declaration from Levenson dated September 17, 2019 (ECF No. 121-45).  The court referred to Levenson's involvement in the June 13, 2019 opinion,[6] but Nocito had not submitted Levenson's declaration at that time.  Nocito's brief in support of the pending motions contained only a few factual references to Levenson and no argument about the legal effect of his declaration or that he was representing only Nocito in his individual capacity.  (*See* ECF No. 116).  Levenson's role, however, became the primary focus of the defense during the July 20, 2021 oral argument.  (*See* Tr., ECF No. 231).

From the Levenson declaration, the court has confirmed that Levenson entered into a fee agreement in 2011 individually with Nocito.  There is no engagement letter between Levenson and the Nocito-related corporations.  Levenson was aware at the outset of his representation that the IRS was conducting an investigation of the Nocito-related corporations, which had recently expanded to Nocito's individual returns.  Levenson Declaration ¶ 4.  Some of the transactions being questioned by the IRS were between Nocito-related entities and some transactions involved management fees with Nocito in his individual capacity.  *Id.*  Levenson stated he was the only attorney with professional responsibility with respect to Nocito's individual criminal exposure.  *Id.*  Levenson knew,

---

[5] Nocito did not articulate any reason why he could not have submitted the Levenson declaration earlier.  It was apparently filed in response to the June 13, 2019 opinion.

[6] *See* ECF No. 99 at 4 ("In late 2011, criminal defense attorney Stanton Levenson ("Levenson") was engaged to assist in the (unspecified) "taxpayers' representation" and agreed to abide by the joint defense agreement.") (citing the unverified narrative, ECF No. 46-3 at ¶ 25).

however, that several other attorneys represented both Nocito and the Nocito-related corporations.  ¶ 6.  Levenson "cooperated extensively" with those attorneys.  *Id.*  Levenson also had numerous interactions with Sundo in Sundo's role as representative of the Nocito-related entities.  *Id.*  As the potential of criminal charges loomed larger, Levenson and the other attorneys took special care to ensure that "we and the clients were in accord as to the Audit defense strategy."  *Id.* ¶ 9.

D.  The court's June 13, 2019 decision

After completing the in camera review, the court heard additional argument on May 8, 2019 (Tr., ECF No. 96).  On June 13, 2019, the court issued a thorough opinion and order denying Nocito's motion for discovery and concluding that he failed to make a colorable showing of government misconduct (ECF No. 99).

As explained in the court's June 13, 2019 opinion, a defendant must overcome a high hurdle to establish governmental misconduct:

> Outrageous misconduct by law enforcement officers in detecting and obtaining incriminating evidence can rise to the level of a due process violation. *Rochin v. California*, 342 U.S. 165 (1952). Courts are cautioned to exercise judicial restraint in this area, and the claim is rarely successfully made, and reserved for only the "most intolerable," "shocking," outrageous," and "egregious" government misconduct that violates "that fundamental fairness ... universal sense of justice" mandated by the Due Process Clause. *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir. 1996) (citing decisions); *see United States v. Hoffecker*, 530 F.3d 137 (3d Cir. 2008) (recognizing that the court of appeals is "extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause").

ECF No. 99 at 10-11 (quoting *United States v. Trombetta*, No. CRIM. 13-227-01, 2015 WL 4406426, at *15 (W.D. Pa. July 20, 2015)).  The court explained that the government misconduct theory is extraordinary, applies only in the most egregious circumstances, and

its viability is hanging by a thread.  *Id.* (citing *United States v. Nolan–Cooper*, 155 F.3d 221, 230–31 (3d Cir. 1998)).

The court explained that the only possible basis for a government misconduct claim by Nocito is if the government deliberately intruded into the personal attorney-client relationship.  ECF No. 99 at 11.   To be entitled to relief, Nocito must demonstrate: (1) the government's objective awareness of an ongoing, personal attorney-client relationship between its informant and the defendant; (2) deliberate intrusion into that relationship; and (3) actual and substantial prejudice.  *Voigt*, 89 F.3d at 1067.   The burdens of both production and persuasion fall on Nocito.  A trial court may find that a defendant's due process rights were not violated, without holding a hearing, when even assuming the movant's facts to be true the conduct does not rise to the level necessary to establish shocking, outrageous, and clearly intolerable government misconduct.  ECF No. 99 at 11-12.   In the June 13, 2019 opinion, the court concluded that Nocito failed to establish a colorable basis for either the first or second prong, and therefore, it did not need to address the prejudice prong.

The court found that the government did not have an objective awareness that it was intruding into a personal attorney-client privilege of Nocito.  In analyzing the objective awareness prong, the court applied the test set forth in *Matter of Bevill, Bresler & Schulman Asset Mng't Corp*., 805 F.2d 120, 124–25 (3d Cir.1986) ("*Bevill*") and progeny.  The court observed that Nocito could not meet the fifth prong of the *Bevill* test, i.e., that "the substance of his conversations with corporate counsel did not concern matters concerning the company or its general affairs." *Bevill*, 805 F.2d at 123.  The court stated:

> The fifth prong of the *Bevill* test poses an insurmountable obstacle because the officer's personal privilege must involve matters entirely separate from

the corporation's affairs.  If the fifth prong is not met, the government could not have an objective awareness of a personal attorney-client privilege by Nocito.  In this case, Nocito's alleged attorney-client privilege involved interrelated tax matters concerning both AHS and Nocito in his individual capacity.

ECF No. 99 at 17.  The court reiterates that Sundo was an accountant and corporate officer (not an attorney) and Exhibit J, the only document that implicated privileged information, involved attorney advice provided to the corporation, not individually to Nocito.[7]

The court also found that Nocito did not make a colorable showing that the government deliberately intruded into his personal attorney-client privilege.  There was no surreptitious eavesdropping or complicit conduct by the government to obtain privileged communications.  ECF No. 99 at 20.  There was nothing in the record reviewed by the court which would implicate the government in coercing Sundo to act as an undercover informant or provide privileged information.  ECF No. 99 at 20.  The record reflects that Sundo was not recruited to act as a confidential informant; rather, he voluntarily divulged information (including Exhibit J) to the government.  (ECF No. 99 at 17).[8]  The court denied Nocito's motion for discovery.

E.  Nocito's motions for reconsideration

---

[7] Nocito's reliance on *United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989), is misplaced.  In that decision, the attorney-client privilege protected conversations between the client and an accountant because the accountant was specifically hired by and acting at the direction of the attorney to provide legal advice to the clients.  *Id.* at 244.  Sundo, by contrast, was not hired as an agent of an attorney to help the attorney provide legal advice, but was independently acting in his role as an officer and employee of the Nocito-related companies.

[8] In support of his pending motions, Nocito introduced no new evidence about the deliberate intrusion prong of the government misconduct test.  The court's conclusion that Nocito failed to make a colorable showing of outrageous misconduct could be upheld on this basis alone.

On July 17, 2019, the court issued an opinion and order denying Nocito's first motion for reconsideration (ECF No. 102).  On July 20, 2021, during the oral argument on the pending motions, the court summarily denied Nocito's second motion for reconsideration.  The court was well aware that "Nocito's discovery motion did not directly allege government misconduct or a wrongful invasion of Nocito's attorney-client privilege, but sought discovery of the government's interactions with a cooperating witness in order to obtain information to support a potential motion to suppress evidence on a theory of government misconduct."  (ECF No. 102 at 1-2).

Those substantive motions are now pending before the court.  The record submitted by Nocito in support of the motions, however, is largely identical to that which the court already found did not make a colorable showing of a violation. (*Compare* ECF No. 46 with ECF No. 121).  To the extent that the pending motions are, in effect, yet another effort to seek reconsideration of the court's previous decisions, they are denied.  The court will focus on the new evidence and arguments presented by Nocito.

F.   Other Levenson documents

After the oral argument on July 20, 2021, Nocito submitted various documents showing correspondence between Sundo, Levenson, and other attorneys involved in the corporate and personal IRS audits (ECF No. 251, under seal and ex parte).  Those documents do not advance Nocito's argument.  In the June 13, 2019 opinion, the court accepted (based on Nocito's unverified narrative) that Sundo was deeply involved in conversations with counsel evaluating the strengths and weaknesses of the case.  The court also accepted that: "All the attorneys representing AHS, Nocito and the affiliated entities communicated with one another and with Sundo and Nocito for the purpose of providing

legal advice in connection with the IRS audit" and "Sundo served as an important source of information and advice and responses to the AHS/Nocito attorneys and the IRS." ECF No. 99 at 4-5.

Nocito also points to a letter from defense counsel to a prosecutor dated July 19, 2016 (ECF No. 121-2). Nocito argues that this letter "eliminated any possible doubt about the government's objective awareness of Mr. Levenson's representation of Mr. Nocito." (ECF No. 225 at 3). The letter, however, merely includes Levenson among a long list of attorneys who provided legal advice to "our clients" (plural). (ECF No. 121-2 at 3). The letter was triggered by the search warrant at AHS and the related companies and there is nothing in the letter that would put the government on notice that Levenson represented Nocito solely and separately in an individual capacity.

Nocito continues to rely on an informal, unwritten community of interest arrangement. The court observed in the June 13, 2019 opinion: "Nocito did not introduce any documents that formalized the alleged joint defense agreement or submit any documents (such as engagement letters, legal bills sent to him personally, etc.) evidencing that any of the attorneys represented Nocito exclusively in his individual capacity." ECF No. 99 at 4. The court is now aware that Levenson represented Nocito only in his individual capacity. There is still no evidence in the record, however, that the government was made aware of a formalized joint defense agreement or knew that Levenson was representing Nocito in a separate, individual capacity. The Levenson declaration and the documents submitted by Nocito confirm the significant intertwining between any individual legal advice Levenson provided to Nocito and the legal advice given to the corporations. Levenson's legal bills, like those of the other attorneys, were paid by AHS,

not personally by Nocito (ECF No. 245-1).  In an email to a federal prosecutor on May 1, 2013, Levenson stated: "Hi Mary – Lou Prosperi, Bill Buck, Wes Yang **and I** represent Joe Nocito **and the various corporate entities**."  (ECF No. 225-3, emphasis added).  In sum, the record reflects that the corporate and individual legal advice was intertwined. Nocito did not establish that the government was made aware of any separate, personal attorney-client privilege.

III.   Legal Analysis

Nocito's pending motions now directly allege government misconduct or a wrongful invasion of Nocito's attorney-client privilege based on its use of Exhibit J in the grand jury.  The motion at ECF No. 108 seeks disclosure of the grand jury transcripts; the motion at ECF No. 109 alleges a Fourth Amendment violation; the motion at ECF No. 110 alleges a Fifth Amendment violation; the motion at ECF No. 111 alleges a Sixth Amendment violation; and the motion at ECF No. 114 seeks an evidentiary hearing.

A.  General legal principles

1.  The remedy sought by Nocito

As a remedy for the government's alleged misconduct, Nocito seeks: (1) dismissal of the indictment; (2) suppression of privileged materials improperly acquired; or (3) suppression of all evidence directly or indirectly derived from the government's alleged unlawful intrusion.  *See* ECF Nos. 110, 111, 112.  Each of these proposed remedies is problematic.

As summarized in *United States v. Lang*, No. CR 2015-0013, 2020 WL 759117,

(D.V.I. Feb. 14, 2020), dismissal of an indictment is an extreme remedy:

> Dismissal of an indictment is appropriate only in exceptional circumstances, "in response to particularly egregious due process violations." *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 252 (3d Cir. 2005) (citations omitted). This "extreme sanction which should be infrequently utilized," *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1978), is "potentially available in cases of deliberate misconduct by the government which resulted in substantial prejudice to the defendant," *United States v. Jafari*, 2012 WL 5335242, at *2 (D.N.J. Oct. 26, 2012), aff'd, 648 F. App'x 226 (3d Cir. 2016) (emphasis omitted) (citing *Fahie*, 419 F.3d at 254-55). The Court should dismiss an indictment only in "narrow circumstances and upon a finding of willful prosecutorial misconduct which violates the Due Process clause and causes prejudice to the defendant." *Fahie*, 419 F.3d at 255-56. A defendant may demonstrate willful prosecutorial misconduct through "a constitutional violation that results from a reckless disregard for a defendant's constitutional rights," or a pattern of constitutional violations showing recklessness on behalf of the prosecution. *See id*.

*Id*. at *2.

In this case, the alleged due process violation boils down to the use of a single document (Exhibit J) in the grand jury.  In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court held that an indictment may be dismissed only when a prosecutor violates one of the "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions."  *Id.* at 46.  In *White* (involving an attorney who, in an effort to reduce his own criminal exposure, gave presumably privileged documents from his clients' file to the government, met with the prosecutors and testified before the grand jury), the court noted "it is far from clear that the proper remedy for a violation of the attorney's duty of confidentiality is exclusion from the client's criminal trial of probative evidence obtained as an indirect consequence of that violation."  879 F.2d at 1513.  In a subsequent, related decision, *United States v. White*, 970 F.2d 328, 335 (7th Cir. 1992), the court upheld the conviction of co-defendants and recognized: "There is a fundamental difference between the use of privileged information at trial, and its use during

the investigatory period." *Id.* at 336 (citing *United States v. Rogers*, 751 F.2d 1074, 1079 (9th Cir. 1985). In *Rogers*, the court held that an IRS agent's wrongful inducement of the defendant's former attorney to disclose privileged communications did not justify dismissal of the indictment and the proper remedy was exclusion of that evidence at trial.[9] *Id.* at 1079 (quoting *United States v. Calandra*, 414 U.S. 338, 349 (1974)) ("Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial."). *See* ECF No. 99 at 19-20. The court concludes that Nocito did not demonstrate the kind of extreme government misconduct that would justify dismissal of the indictment in this case.

It is unclear what evidence Nocito seeks to suppress under his misconduct theory. The only document that potentially discloses attorney-client privileged information is Exhibit J itself, and as explained above, Nocito does not have a personal privilege with respect to that document. The government represented, in any event, that it will not introduce Exhibit J into evidence in its case in chief.

Nocito did not articulate what documents he contends were derived "directly or indirectly" as a result of Exhibit J. The court notes that Sundo turned over Exhibit J in February 2013 and the government had been engaged in an extensive civil and criminal audit investigation for several years prior to that date. Sundo's grand jury testimony did not occur until November 29, 2017. From the court's review of the record, it cannot identify any documents that the government wrongfully obtained as a result of Exhibit J

---

[9] The court reserves ruling on all questions of admissibility of evidence at trial in this case.

that would be subject to suppression.  In sum, even assuming, arguendo, that Nocito could establish a constitutional violation, it is unclear that he would be entitled to any remedy other than suppression of Exhibit J itself.

>    2.   The attorney-client privilege must be narrowly construed

In this federal criminal prosecution, the federal common law of attorney-client privilege is applicable.  Fed. R. Evid. 501.  The purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly and "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse*, 951 F.2d at 1423–24; *accord In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979) ("because the privilege obstructs the search for the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with logic of its principle") (citations and internal quotations omitted).

Nocito's motions are premised on an expansive view of the attorney-client privilege and government misconduct theory.  He asserts an individual attorney-client privilege in a document authored by an accountant (Sundo), sent by Sundo to Nocito (Sundo's corporate superior), on which no attorneys are copied.  As explained above, the court found that Exhibit J does not reflect any attorney advice to Nocito in his individual capacity.

Nocito posits an alleged community of interest involving the attorneys, himself, the

corporations he controls, and an employee of those corporations.[10]  When the same person controls both the corporate and individual privilege, the situation is particularly "fraught with the danger of subterfuge."  *See* ECF No. 99 at 15 n. 14 (quoting Paul R. Rice, 1 Attorney-Client Privilege in the U.S. § 4:23 (Dec. 2018)).  Although an informal community of interest arrangement may be cognizable in theory, it is not persuasive evidence to support an allegation of government misconduct in the specific circumstances of this case.

        3.   Community of interest theory

Nocito tries to overcome the intertwining of the corporate and individual legal advice by citing the community of interest doctrine.  In essence, he argues that Levenson was his personal attorney and entered into an informal common defense arrangement with the attorneys representing the corporations.

In *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), as amended (Oct. 12, 2007) ("*Teleglobe*"), the Third Circuit Court of Appeals explained that "courts replaced the joint-defense privilege, which only applied to criminal co-defendants, with a broader one that protects all communications shared within a proper 'community of interest,' whether the context be criminal or civil."  *Id.* at 366. "The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege."  *TC Tech. LLC v. Sprint Corp.*, No. 16-CV-153, 2018 WL 6584122, at *2 (D. Del. Dec. 13, 2018).  The party claiming the privilege must establish: "(1) the communication was made by separate parties in the

_____

[10] Nocito defines Sundo as a member of the community (as he must, to avoid waiver of the privilege by disclosure to an outsider).

course of a matter of common interest (or, in accordance with *Teleglobe*, a substantially similar legal interest); (2) the communication was designed to further that effort, and (3) the privilege was not otherwise waived." *In re Touch Am. Holdings, Inc.*, No. 03-11915, 2015 WL 6460260, at *4 (Bankr. D. Del. Oct. 26, 2015).

There is a fundamental problem with Nocito's argument. As will be explained below, the community of interest doctrine does not <u>create</u> a new source of a privilege; it just applies to rebut waiver. In addition, it is doubtful that the doctrine would apply under the facts of this case.

The community of interest doctrine does not <u>create</u> a new source of a privilege. As explained in *Mine Safety Appliances Co. v. North River Insurance Co.*, "the community of interest doctrine is not itself a privilege, but rather is an exception to the waiver rule." *Mine Safety*, No. 2:09-CV-00348, 2012 WL 12930283, at *1 (W.D. Pa. Aug. 6, 2012), report and recommendation adopted, 2012 WL 12930398 (W.D. Pa. Sept. 18, 2012). *Accord Travelers Prop. Cas. Co. of Am. v. USA Container Co.*, No. 09CV01612, 2012 WL 12898823, at *21 (D.N.J. Oct. 25, 2012), report and recommendation adopted, 2012 WL 12903853 (D.N.J. Nov. 28, 2012) (community of interest doctrine "does not create a new or separate privilege but instead prevents waiver of the attorney-client privilege and work-product protection, when otherwise privileged communications are shared with a third party who shares the client's interest.").

The community of interest doctrine "does not create an independent privilege, but depends upon a proper showing of the other elements of the attorney-client privilege or some other recognized privilege before it will apply." *Net2Phone, Inc. v. Ebay, Inc.*, No. CIV.A. 06-2469, 2008 WL 8183817, at *7 (D.N.J. June 26, 2008) (quoting *Grider v.*

*Keystone Health Plan Cent., Inc.*, No. CIV.A. 05-MC-40, 2005 WL 2030456, at *6 (M.D. Pa. July 28, 2005)).  In other words, Nocito cannot use this doctrine to <u>create</u> an individual privilege in Exhibit J.

The first step in the inquiry is to determine whether an attorney-client privilege applies to the document at issue.  *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, No. 3:16-CV-00897, 2020 WL 762835, at *6 (M.D. Pa. Feb. 14, 2020).  The only applicable privileged information in this case is the advice given to the corporations in Exhibit J.  Pursuant to *Bevill*, Nocito cannot assert a personal privilege where any individual advice was intertwined with the corporate advice.  Nocito does not have an individual privilege in Exhibit J under these circumstances.  The community of interest doctrine does not create a privilege and waiver is not applicable in the context of intertwined corporate and personal representation when the person claiming the privilege does not possess a separate personal privilege in the advice.  *Cf. In re Chevron Corp.*, 650 F.3d 276, 290 n. 19 (3d Cir. 2011) ("inasmuch as the communications disclosed were not privileged, it is obvious that we need not address the community-of-interest doctrine").

In any event, it is doubtful that the community of interest doctrine applies to Exhibit J.  In *In re Grand Jury Subpoena*, 274 F.3d 563, 573 (1st Cir. 2001), the court recognized a split of authority about whether the target of the prosecution may block disclosure by a co-client who is willing to aid a criminal investigation.  In *Teleglobe*, the court stated: "The great caveat of the joint-client privilege is that it only protects communications from **compelled** disclosure to parties outside the joint representation."   493 F.3d at 366 (emphasis added).  Here, the communication was not compelled – instead, Sundo (a member of the community of interest under Nocito's theory) voluntarily disclosed Exhibit

J to the investigators.

In *Teleglobe*, the court emphasized two limitations on the community of interest doctrine: (1) to be eligible for continued protection, the communication must be shared with the attorney of the member of the community of interest; and (2) all members of the community must share a common legal interest in the shared communication. *Id*.  Sundo did not have the same legal interests as Nocito did as an individual.  As reflected by Sundo's engagement of separate counsel (who was not part of the alleged community of interest), Sundo wanted to protect himself from criminal prosecution.

In *Teleglobe*, the court observed that the community of interest privilege should not be used as a post hoc justification for a client's impermissible disclosures. The court explained: "[t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies.  *In re Teleglobe Commc'ns Corp*., 493 F.3d 345, 365 (3d Cir. 2007).  The court stated: "Sharing the communication directly with a member of the community may destroy the privilege."  Id. Similarly, in *Chabot v. Walgreens Boots All., Inc*., No. 1:18-CV-2118, 2020 WL 3410638, at *10 (M.D. Pa. June 11, 2020), the court explained:  "A communication loses its privilege when it is sent between separately represented clients outside the presence of a lawyer." *Id.* at *10 (citing *Wayne Land and Mineral Group, LLC v. Delaware River Basin Commission*, No. 16-897, 2020 WL 762835, at *7 (M.D. Pa. 2020).

Exhibit J is just such a document – it was sent by Sundo to Nocito outside the presence of a lawyer.  *See Wayne*, 2020 WL 762835, at *7 (M.D. Pa. Feb. 14, 2020) (common-interest privilege unavailing because document was sent to executive director,

not attorney); *but see TC Technology LLC v. Sprint Corp.*, No. 16-153, 2018 WL 6584122, at *2-3 (D. Del. Dec. 13, 2018) (*Teleglobe* applied Delaware law about whether disclosure to a non-attorney eviscerated the community of interest doctrine).

In summary, the community of interest doctrine cannot create an individual privilege by Nocito in Exhibit J. Even if a privilege existed, there are significant questions about whether it would apply under the circumstances of this case. The community of interest argument does not support Nocito's claim of outrageous government misconduct.

With that background, the court turns to the specific motions filed by Nocito.

B. Motion to disclose grand jury transcripts (ECF No. 108)

Nocito seeks disclosure of all grand jury transcripts which reflect discussion or use of documents provided by Sundo. He argues that he can overcome the rule of grand jury secrecy because: (1) he established particularized need, per Rule 6(e)(3)(E)(i); and (2) he established grounds to dismiss the indictment, per Rule 6(e)(3)(E)(ii).

Nocito recognizes that the court already conducted an in camera review of Sundo's testimony before the grand jury and the 13 "Sundo documents." He argues, however, that the adversary process requires him, not the court, to have full access to the information. Nocito did not cite any authority for this proposition. Nocito also speculates that there may be other testimony or other privileged materials the court did not review.

The government opposes the motion. It argues that this court already rejected a similar discovery request, and that Nocito's speculations do not overcome the strong interest in grand jury secrecy. The government portrays this motion as an effort to reconsider the court's in camera review. The government represents that Nocito has a copy of all the documents provided by Sundo.

The test to overcome grand jury secrecy is difficult:

> "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1957). A court may authorize disclosure of grand jury testimony, however, if the defendant shows that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED.R.CRIM.P. 6(e)(3)(E)(ii). To obtain the testimony, a party must show "a particularized need for that information which outweighs the public interest in secrecy." *McDowell*, 888 F.2d at 289.

*United States v. Minerd*, 299 F. App'x 110, 111 (3d Cir. 2008).

Neither of the grounds asserted by Nocito is meritorious. There can be no "particularized need" after the court already performed an in camera review; and there is no colorable claim of government misconduct that would warrant dismissal of the indictment. This motion will be DENIED.

C.   Motion to dismiss indictment based on 4th Amendment violation (ECF No. 110)

Nocito argues that the <u>government</u> violated the Fourth Amendment when <u>Sundo</u> gave Exhibit J to the agents. In essence, Nocito is making an "acting in concert" argument.

The Fourth Amendment does not apply to conduct by private individuals. The Supreme Court has recognized that "most rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 936 (1982) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). "This fundamental limitation on the scope of constitutional guarantees 'preserves an area of individual freedom by limiting the reach of federal law' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 619 (1991) (quoting *Lugar*, 457 U.S. at 936–37). In deciding whether governmental action has occurred, the central purpose of

the inquiry is to "assure that constitutional standards are invoked when it can be said that the [federal government] is responsible for the specific conduct of which plaintiff complains." *Brentwood*, 531 U.S. at 295.

Nocito alleges that Sundo acted in concert with federal agents. Most of the decisions about whether the conduct of a private party should be attributed to the government involve "state action" in the context of a § 1983 claim. In *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001), the court of appeals confirmed that the same analysis governs whether an individual acted in concert with a federal actor.

The Third Circuit Court of Appeals has outlined three broad tests generated by Supreme Court jurisprudence to determine whether government action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the government; (2) whether the private party has acted with the help of or in concert with government officials; and (3) whether the government has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

Based on the in camera review, the court found there were no facts to support Nocito's "acting in concert" argument. ECF No. 99 at 7, 21 (Sundo voluntarily provided Exhibit J, the government did not recruit Sundo to wrongfully obtain privileged information, and Nocito's speculation that the government directed Sundo's covert activities was not borne out). In short, there is no Fourth Amendment violation because Sundo's activities cannot be attributed to the government. This motion will be denied.

D.   Motion to dismiss indictment based on 5th Amendment violation (ECF No. 111)

Nocito argues that the government violated the due process clause of the Fifth Amendment.  Despite the court's denial of his discovery motion based on its conclusion that he failed to make a colorable showing of a violation, Nocito reasserts his government misconduct theory (based on a substantially similar record).

The court adheres to its conclusions in the June 13, 2019 opinion.  The Levenson declaration does not change that analysis, for the reasons set forth above.  The alleged informal community of interest arrangement would not have given the government an objective awareness of a separate personal attorney-client privilege held by Nocito.  Nocito did not provide any evidence that the government deliberately intruded into his personal attorney-client privilege.  Nocito also failed to establish any actual and substantial prejudice because the only arguably privileged document (Exhibit J) will not be introduced into evidence by the government.  This motion will be denied.


E.   Motion to dismiss indictment based on 6th Amendment violation (ECF No. 112)

Nocito argues that the government exploited Exhibit J in such a way as to constitute a Sixth Amendment violation of his right to counsel.  The Sixth Amendment states:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, **and to have the Assistance of Counsel for his defence**."  (emphasis added).

In the June 13, 2019 opinion, the court held that a Sixth Amendment right to counsel is not implicated by pre-indictment misconduct. ECF No. 99 at 10 n. 11 ("Nocito's Sixth Amendment rights are not implicated because the alleged misconduct occurred prior to his indictment. *See United States v. Fattah*, 858 F.3d 801, 809 (3d Cir. 2017), as amended (June 12, 2017) (discussing "outer limits of the Sixth Amendment's protection")). The court adheres to this conclusion. This motion will be denied.

### F.  Motion for evidentiary hearing (ECF No. 114)

Nocito requests an evidentiary hearing. The government contends that an evidentiary hearing is not necessary. An evidentiary hearing is not required unless a defendant advances a "colorable claim" that his constitutional rights have been violated. *United States v. Brink*, 39 F.3d 419 (3d Cir. 1994). A claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct." *Voigt*, 89 F.3d at 1067. To warrant an evidentiary hearing, a defendant's motion must contain "issues of fact material to the resolution of the defendant's constitutional claim." *Id.*

In the context of a motion to suppress, an evidentiary hearing is required only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A "material" factual issue is one that "makes a difference in the outcome." *United States v. Persinger*, 2008 WL 2766154, at *2 (3d Cir. 2008) (not precedential).

Nocito did not identify a disputed issue of material fact that would support a

colorable claim to justify an evidentiary hearing. The court conducted a thorough in camera review of the documents provided by Sundo and his grand jury testimony, as suggested in *White*, 879 F.2d at 1514. The record submitted by Nocito in support of the pending motions is substantially identical to that considered by the court in denying his motion for discovery. The court considered the additional evidence to which Nocito points (i.e., the Levenson declaration and the other documents) and concluded they do not support Nocito's claims, for the reasons set forth above. Nocito acknowledges there is nothing in the record advising the court of further intrusion into the attorney-client privilege (ECF No. 225 at 12). Any evidentiary hearing, therefore, would merely constitute a fishing expedition. Nocito's motion for an evidentiary hearing (ECF No. 114) will be DENIED.

IV.   Conclusion

After thorough review and consideration of the parties' arguments and submissions, Nocito's motions to dismiss the indictment or suppress evidence on the basis of alleged government misconduct (ECF Nos.108, 110, 111, 112 and 114) will be DENIED. The materials submitted by Nocito do not establish a claim of outrageous government misconduct and do not provide a basis to dismiss the indictment or suppress evidence.

An appropriate order follows.

Dated: September 29, 2021              BY THE COURT:

                                       /s/ Joy Flowers Conti
                                       Joy Flowers Conti
                                       Senior United States District Judge