IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Criminal No. 18-35 |
| ) | |
| JOSEPH W. NOCITO, ) | |
| ) | |
| Defendant. ) | |

OPINION

I. Introduction

Pending before the court is a motion for protective order (ECF No. 167) filed by the government. Defendant Joseph W. Nocito ("Nocito") filed a response in opposition to the motion (ECF No. 172). The court heard oral argument on the motion on July 21, 2021, and permitted the government to file a supplement and Nocito to file a response. The parties submitted their respective post-argument positions (ECF Nos. 228, 255) and the motion is ripe for decision.

II. Factual and Procedural Background

The defense team obtained a Memorandum of Interview by Internal Revenue Service ("IRS") agents on June 11, 2015 (the "Marzo MOI" – *attached to the government's sealed motion*) and intends to use it in preparing the defense. John Marzo ("Marzo") was an auditor at Bates, Barksdale and Ickert ("BBI"). The Marzo MOI was provided by the government to Marzo's attorney, who sent it to Marzo at his BBI work email address. The Marzo MOI was later produced by BBI to its client Automated Health Services ("AHS") pursuant to a general records request; and AHS produced it to the defense team.[1] The

---

[1] Nocito is the president and majority stockholder of AHS.

1

government is not asserting a privilege on the document; indeed, the government represents that it will produce the document to Nocito at the appropriate time (ECF No. 228 at 2). After the government filed its motion, BBI's attorney confirmed to defense counsel that BBI is not asserting a privilege or seeking return of the document (ECF No. 172).

### III. Legal Analysis

The government contends that the Marzo MOI is a witness statement that constitutes Jencks Act material, which it will produce at an appropriate time, but not now. It asks the court to order the document to be returned to BBI.[2]

Nocito argues that he obtained the document legally and the Jencks Act does not apply where there was no "discovery" and the government did not provide the document at issue. Nocito reasons as follows: (1) he did not get the MOI from the government; (2) the government shared the MOI with no limits on dissemination (i.e., it waived any confidentiality); (3) the MOI was not the subject of any subpoena or discovery; (4) the Jencks Act codifies the government's duties; it does not proscribe the defendant from obtaining information; and (5) he did not make a request for early production of Jencks materials.

The government cites Federal Rule of Criminal Procedure 16(a)(2), which states:

> (2) Information Not Subject to Disclosure. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective

---

[2] BBI is not a party to this criminal case and has not had an opportunity to be heard. The government did not address whether there are any restrictions on BBI's dissemination of the document.

2

government witnesses except as provided in 18 U.S.C. § 3500.

The Jencks Act, 18 U.S.C. § 3500, is entitled "Demands for production of statements and reports of witnesses." It provides (emphasis added):

> (a) In any criminal prosecution brought by the United States, no statement or report **in the possession of the United States** which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of **subpoena, discovery, or inspection** until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, **on motion of the defendant**, **order the United States to produce** any statement (as hereinafter defined) of the witness **in the possession of the United States** which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
>
> (c) If the United States claims that any statement **ordered to be produced** under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then **direct delivery of such statement to the defendant for his use**. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. **Whenever any statement is delivered to a defendant** pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.
>
> (d) **If the United States elects not to comply with an order of the court** under subsection (b) or (c) hereof **to deliver to the defendant any such statement**, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

>  (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means--
>  (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>  (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a **substantially verbatim recital** of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>  (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*See also* Fed. R. Crim. P. 26.2 (tracking the Jencks Act).

The court has no difficulty concluding that the Marzo MOI is a "statement" as defined in the Jencks Act. It is a substantially verbatim recital of oral statements made by Marzo to its agents and was prepared by an IRS agent contemporaneously with the interview. Whether the Jencks Act applies to the present circumstances is more difficult. Typically, Jencks Act motions involve defendants asking the court to order production of documents in the government's possession. Here, the government is asking the court to claw back a document that was in the possession of a third party and is already in Nocito's possession.

The text of the Jencks Act favors Nocito's argument. As the bolded portions above indicate, the Jencks Act applies when the document is "in the possession of the United States." § 3500(a), (b). Nocito already has the Marzo MOI -- he does not need to take discovery, issue a subpoena or ask the court to order the government to deliver the document to him. The government's reliance on *United States v. McBroom*, No. 21-97 (involving a defendant's efforts to subpoena Jencks Act materials), is therefore misplaced.

The policies underlying the Jencks Act also favor Nocito's position. In

4

*United States v. Isgro*, 974 F.2d 1091, 1095 (9th Cir. 1992), <u>as amended on denial of reh'g</u> (Nov. 25, 1992), the court explained that the purposes behind the Jencks Act are: (1) to protect government files from intrusion; and (2) to protect witnesses from threats and intimidation. The court concluded that transcripts of a witness' testimony in another trial are not within the scope of the Jencks Act because the testimony was public and transcripts could be obtained.

The present circumstances are somewhat analogous. Although Marzo did not testify at a trial, the substance of the Marzo MOI has been "public" for several years, in that the government provided the document to Marzo's attorney without any restriction on dissemination. The government provided the document to Marzo's attorney, who sent it to Marzo at his BBI email address. BBI, in turn, sent it to AHS pursuant to a general request for its files, and AHS sent it to the defense team. The whole process played out over two years. The government and BBI confirmed that they are not asserting any privilege or work product protection with respect to the Marzo MOI. No inappropriate conduct by the defense team in obtaining the document was brought to the court's attention. In effect, the government is asking the court to "unring the bell."

The witness protection rationale does not apply. Marzo's identity is known. He did AHS' audits for many years. The government provided no argument or evidence that Marzo is facing threats or intimidation.

The Jencks Act does not prohibit the early disclosure of documents. Indeed, in this district, the government does not strictly adhere to the stricture that documents need not be produced until a witness testifies; instead, the government

5

commonly provides Jencks Act materials to defendants well in advance of trial. In effect, the government by providing disclosure of the Marzo MOI to Marzo's attorney without any restriction waived any objection to Nocito's receipt of the document.

In its supplement, the government seeks return of the Marzo MOI under Federal Rule of Evidence 502(b). The court is not convinced. To trigger Rule 502(b), (1) the disclosure must be inadvertent; (2) the holder of the privilege or protection must have taken reasonable steps to prevent disclosure; and (3) the holder must have promptly taken reasonable steps to rectify the error. F.R.E. 502(b). The government cannot satisfy any of these prerequisites. The record reflects that the government intentionally gave the Marzo MOI to Marzo's attorney. The government took no reasonable steps to prevent disclosure or further dissemination of the Marzo MOI; instead, it apparently provided the document to Marzo's counsel without restriction. The government did not act promptly – the Marzo MOI was prepared in 2015 and the government filed its motion for a protective order in 2020, after being advised by defense counsel of the document. The government cannot claw back the Marzo MOI under Rule 502(b).

In sum, neither the Jencks Act nor Rule 502(b) support the novel arguments raised by the government. The government cited no analogous legal authority. Accordingly, the court need not reach Nocito's alternative argument that the government's position violates his 5th and 6th Amendment rights.

IV. Conclusion

For the reasons set forth above, the government's motion for a protective order (ECF #167) will be DENIED.

An appropriate order will be entered.

Dated: October 12, 2021

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge