IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-35 |
| | ) | |
| JOSEPH W. NOCITO, | ) | |
| | ) | |
| Defendant. | ) | |

**TENTATIVE FINDINGS AND RULINGS**
**CONCERNING THE APPLICABLE ADVISORY GUIDELINE RANGE**

On November 17, 2022, defendant Joseph Nocito ("Nocito" or "defendant") pleaded guilty to count 1 of the Indictment at Crim. No. 18-35, which charged him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The statutory maximum prison term is 5 years. Nocito's guilty plea was made pursuant to a written plea agreement. The Probation Office prepared a Presentence Investigation Report ("PIR") (ECF No. 310).

Pursuant to Local Rule 32C.4, counsel for defendant and for the government each had an opportunity to submit objections to the PIR. The government had no objections (ECF No. 312).

Nocito raised an objection to the guideline calculation set forth in the PIR; specifically, that the offense level determined in the PIR was contrary to the terms of the plea agreement. Nocito also seeks downward departures based on: (1) U.S.S.G. §§ 5H1.1 and 5H1.4 (age and physical condition); (2) U.S.S.G. § 5H1.6 (family responsibilities); and (3) U.S.S.G. § 5H1.11 (charitable works). In addition (or in the alternative), Nocito asks the court to vary downwards from the applicable advisory guideline range. (ECF No. 313).

The government filed a response (ECF No. 314), contending that the guideline

calculation is correct and opposing the requests for downward departures.

Nocito's objections

Nocito contends that the parties stipulated in the plea agreement to the following guideline calculation: (1) base offense level of 24; (2) criminal history category I; and (3) a resulting advisory guideline range of 37-46 months incarceration (i.e., offense level 21, after a 3-level reduction for acceptance of responsibility). Plea Agreement ¶ C(3). The base offense level was derived from a stipulated tax loss greater than $3,500,000 but not more than $9,500,000. Plea Agreement ¶ C(2). The plea agreement provided that the stipulated amount of loss was not binding on the court. *Id.* Nocito also points out that the parties stipulated and agreed that "no additional offense characteristics or adjustments shall apply." Plea Agreement ¶ C(4).

The government's position is somewhat confusing. There is a heading stating that the guideline calculation in the PIR is correct (ECF No. 314 at 4). In footnote 5, however, the government states that the tax loss calculated in the PIR is less accurate than that calculated by the Internal Revenue Service ("IRS"):

> The PSR officer's [calculation] of the tax loss is higher because it did not include the more specific tax rate calculation by the IRS and taxes paid by the Defendant. The more accurate tax loss calculation as agreed to by the parties in the Plea Agreement of $15,824 million is the precise tax loss. The guideline range, as adjusted, would be 26 under the Tax Table, plus the additional 4 levels, or overall 32[1] before a 3-level reduction for acceptance of responsibility, or 87- 108 months. Overall immaterial to the United States' argument opposing any downward departures or variances.

(ECF No. 314 at 5 n.5). The court understands the government's position to be: (1) the tax loss determined in the PIR was too high, and the base offense level should be 26, not 28; (2)

---

[1] The government's math in footnote 5 is flawed (or incomplete): 26 + 4 = 30 (not 32).

ultimately, it does not matter because, either way, the tax loss results in an advisory guideline range above the statutory maximum of 60 months in prison.

The probation office filed an addendum to address the objection (ECF No. 317). The probation office contends that it calculated the tax loss correctly according to the Guidelines Manual.

Nocito's reliance on the stipulations in the plea agreement to preclude the guideline calculation in the PIR is misplaced. Regardless of the parties' stipulations in the plea agreement, the court has a duty to calculate the correct guideline range. As explained in *United States v. Chiccini*, No. 21-1036, 2022 WL 1024261 (3d Cir. Apr. 6, 2022):

> A district court must begin every sentencing by "correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). We have emphasized that "a correct Guidelines calculation is crucial to the sentencing process ... and have admonished that because the Guidelines still play an integral role in criminal sentencing ... the entirety of the Guidelines calculation [must] be done correctly." *United States v. Boney*, 769 F.3d 153, 159 (3d Cir. 2014) (cleaned up).

*Id.* at *2. After correctly calculating the applicable guideline range, the court will consider the arguments of the parties (such as whether to accept the stipulations in the parties' plea agreement and Nocito's requests for downward departures) and the § 3553(a) sentencing factors. *Boney*, 769 F.3d at 159; U.S.S.G. § 1B1.1.

The nonbinding stipulated tax loss in ¶ C(2) of the plea agreement is too low. In ¶ A(10) of the plea agreement, Nocito agreed to make restitution to the IRS in the amount of $15,824,056.00. The government contends that $15,824,056.00 is the "precise tax loss." (ECF No. 314 at 5 n.5). Nocito makes no substantive challenge to the accuracy of that figure; he simply argues that the parties stipulated in the plea agreement to a different amount. The court

tentatively finds that the tax loss is $15,824,056.00, which results in a base offense level of 26 for a tax loss greater than $9,500,000 per the table in U.S.S.G. §2T4.1. As set forth in PIR ¶ 21, a 2-level increase pursuant to § 2T1.1(b)(1) applies for failing to report income exceeding $10,000 in any year; and a 2-level increase pursuant to § 2T1.1(b)(2) applies for using sophisticated means. In addition, a 2-level enhancement (for role in the offense) applies pursuant to U.S.S.G. § 3B1.1(c). *See* PIR ¶ 24. Nocito did not substantively challenge the applicability of these enhancements[2] and they are supported by the facts of the case. The adjusted offense level is 32. Subtracting 3 levels for acceptance of responsibility results in a total offense level of 29 (rather than 31, as calculated in the PIR). An offense level 29 and criminal history category I would ordinarily yield an advisory guideline range of 87-108 months.

In this case, however, there is another step to the calculation. The sentencing guidelines provide: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(a). In this case, the statutory maximum term of imprisonment is 60 months; therefore, Nocito's advisory guideline "range" is 60 months in prison.[3]

The probation office ultimately determined the correct guideline range of 60 months, although its calculated tax loss (and base offense level) may have been incorrect. PIR ¶ 54. The fine range would remain $30,000 to $250,000, as calculated in the PIR, per the Fine Table in § 5E1.2. Nocito's objections to the advisory guideline calculation are denied.

---

[2] Nocito's vague assertion that he "does not agree with all the content" in ¶¶ 8-16 of the PIR (ECF No. 313 at 4 n.1) is not a valid objection. *See United States v. Joseph*, 648 F. App'x 244, 249 (3d Cir. 2016) (the purpose of objections to PIR is to put the government on notice of the challenged facts and, accordingly, a "vague, blanket objection" will not suffice) (citations omitted).

[3] The court need not resolve the disagreement between the probation office and the government about the accuracy of the tax loss calculated in the PIR (in excess of $30 million) because, either way, the guideline "range" will be 60 months in prison.

Upon consideration of the correct advisory guideline calculation, the court will accept the parties' stipulations in the plea agreement that the court should sentence Nocito based upon a lower tax loss and no other offense characteristics or enhancements, for a total offense level of 21 and an advisory guideline range of 37-46 months. The government explained that it conceded the enhancements as part of the plea negotiations, which included Nocito's agreement to make full restitution, in recognition of the applicable statutory maximum sentence. (ECF No. 314 at 4 n.3 &6-7). The court notes the government's representation that it will argue for a sentence of incarceration within that range. (ECF No. 314 at 12).

Nocito's motions for downward departures

Nocito seeks several downward departures based on the policy statements about personal characteristics. The court notes that the Introductory Commentary to Part H recognizes that the Sentencing Reform Act directs that the policy statements be applied "entirely neutral" with respect to several characteristics, including socioeconomic status. *See* U.S.S.G. § 5H1.10.

The court also notes the distinction between "departures" and "variances." When imposing a sentence, the court must (1) calculate the guidelines range; (2) rule on any motions for departure from the calculated range for reasons contemplated by the guidelines themselves; and (3) consider whether a variance from the guideline is appropriate after considering the § 3553(a) factors and exercising its discretion. *United States v. Olinsky*, No. 21-1659, 2023 WL 2945899, at *4 (3d Cir. Apr. 14, 2023).

(1) <u>U.S.S.G. §§ 5H1.1 and 5H1.4 (age and physical condition)</u>

Guideline § 5H1.1 provides:

Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an **unusual degree** and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is **elderly and infirm** and where a form of punishment such as home confinement might be **equally efficient** as and less costly than incarceration. Physical condition, which may be related to age, is addressed at § 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

U.S.S.G. § 5H1.1 (emphasis added).

Guideline § 5H1.4 provides, in relevant part:

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an **unusual degree** and distinguishes the case from the typical cases covered by the guidelines. An **extraordinary physical impairment** may be a reason to depart downward; e.g., in the case of a **seriously infirm** defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4 (emphasis added).

Nocito argues that he is 81 years old and in poor health. Nocito incorporates the description of his physical condition and list of prescribed medications in PIR ¶¶ 40-41. In short, Nocito contends that he cannot acclimate to prison. (ECF No. 313 at 5). The government argues that Nocito's age and condition do not warrant a downward departure. The government cites several decisions in which courts rejected downward departures for age and infirmity when elderly defendants committed serious fraud crimes. *See, e.g., United States v. Seljan*, 547 F.3d 993, 1007 (9th Cir. 2008) ("district court acknowledged that Seljan's age and health reduced the likelihood of recidivism, and it addressed Seljan's concern that the 20-year sentence at age 87

6

was tantamount to life imprisonment.").

In *United States v. Lewis*, 594 F.3d 1270, 1276-77 (10th Cir. 2010), the sentencing court declined to vary from the advisory guidelines range based on the defendant's age (72) and health. The court explained that the guidelines discourage consideration of a defendant's age unless the defendant is also infirm and the guidelines discourage consideration of a defendant's physical condition unless the defendant has an "extraordinary physical impairment." *Id.*  The guidelines require the court to consider whether home detention might be "equally efficient" as incarceration.

The court acknowledges and will give weight to Nocito's advanced age (81).  Nocito did not establish that he is "infirm" to an "unusual degree."  The court observed his demeanor at the numerous hearings in this case.  He does not appear frail or feeble.  He appears to be cognitively sharp.  The PIR reflects that he is 6'3" and over 250 pounds.  PIR ¶ 40.  Nocito did not establish an extraordinary physical impairment.  There is no evidence that the Bureau of Prisons ("BOP") could not accommodate his medical needs and existing medications.[4]

The court has concerns about whether a sentence of home confinement would be as "efficient" as incarceration.[5]  Nocito's offense conduct involved false claims that funds used to build a luxury home were business expenses.  Nocito committed the offense in his 70s.  The sentencing factors of just punishment, respect for the law, and general and specific deterrence may warrant Nocito that serve his sentence at a prison, rather than at home.

---

[4] The government represents that it will provide evidence that the BOP can provide proper care for Nocito.  (ECF No. 314 at 8).  The BOP houses 4503 inmates over age 65. https://www.bop.gov/about/statistics/statistics_inmate_age.jsp, last visited September 5, 2023.  The court did not locate any specific statistics about inmates over age 80.

[5] A home confinement sentence would likely be less costly than imprisonment due to the expected medical needs of elderly inmates.

In sum, the court recognizes its discretion to grant a downward departure on the basis of Nocito's age and physical condition, but its preliminary assessment is that the departure is not warranted. If there is other evidence that Nocito wants to present to the court concerning this departure request, the court will consider it at the sentencing hearing. In any event, the court will consider those factors in deciding whether or not to grant a variance from the advisory guideline range.

(2) U.S.S.G. § 5H1.6 (family responsibilities)

Guideline § 5H1.6 provides, in relevant part: "In sentencing a defendant convicted of an offense other than an offense described in the following paragraph, family ties and responsibilities are **not ordinarily relevant** in determining whether a departure may be warranted. U.S.S.G. § 5H1.6 (emphasis added).

Nocito recognizes that family responsibilities are "not ordinarily relevant." Nocito argues, nevertheless, that a downward departure is warranted because his 9 children and grandchildren "rely heavily on Mr. Nocito's financial support." (ECF No. 313 at 6). Nocito claims he provides educational expenses and assists with "life expenses" and submits that his incarceration will result in "a substantial degree of financial hardship" to his children and grandchildren. (ECF No. 313 at 7).

The government objects strenuously to a departure on this ground. The government points out that Nocito did not identify the type of "life expenses" he provides; and notes that Nocito's children are gainfully-employed adults, living in expensive homes. The government also points out, accurately, that Nocito did not complete the required Net Worth and Monthly

Cash Flow Statement, such that the court and government are unaware of his true net worth.

The Commentary to § 5H1.6 provides a list of "Circumstances to Consider":

(A) In General.--In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:

(i) The seriousness of the offense.
(ii) The involvement in the offense, if any, of members of the defendant's family.
(iii) The danger, if any, to members of the defendant's family as a result of the offense.

(B) Departures Based on Loss of Caretaking or Financial Support.--A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:

(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
(ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
(iv) The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 Commentary.

The circumstances set forth in the Commentary do not support Nocito's motion. Nocito committed a serious crime -- an extensive, long-lasting (2005-2013) and very large tax fraud. His family benefited from the offense, at least indirectly, in the amount of the financial support

Nocito directed to family members rather than paying his taxes. His family was not exposed to danger.

Nocito did not satisfy any of the considerations in Comment 1(B). He articulated no specific loss of essential financial support. He did not show how any harm to his family "substantially exceeds the harm ordinarily incident to incarceration." He did not show an absence of ameliorative programs, or that his financial support was "irreplaceable." Because Notico did not demonstrate a specific loss of financial support, he cannot, on the record before the court, show how a departure would effectively address that need.

The PIR reflects that Nocito has zero (0) dependents (a fact to which Nocito did not object). The PIR reflects that Nocito has an ownership interest in 115 businesses and one checking account with a balance over $1.9 million. PIR ¶ 50. He has an estimated positive net worth in the millions of dollars. PIR ¶ 50. Nocito represented that he is able to pay a fine up to the statutory maximum. PIR ¶ 50. Nocito did not submit any evidence about the financial condition of the children and grandchildren who he states are dependent on his support. Nocito did not explain why he could not continue to provide financial support from his substantial assets while incarcerated.

Courts routinely send defendants to prison despite the devastating impact that event has on their immediate families. Comment 1(B)(ii) specifically provides that "the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration." U.S.S.G. § 5H1.6 Commentary. There is no evidence that Nocito's family will suffer in any extraordinary

way.

In sum, the court recognizes its discretion to grant a downward departure on the basis of his family responsibilities, but its preliminary assessment is that the departure is not warranted. To the extent there is other evidence, Nocito may present that at the sentencing hearing.

(3) U.S.S.G. § 5H1.11 (charitable works)

Guideline § 5H1.11 provides, in relevant part: "Civic, charitable, or public service; employment-related contributions; and similar prior good works are **not ordinarily relevant** in determining whether a departure is warranted." U.S.S.G. §5H1.11 (emphasis added).

Nocito submits that he has engaged in significant and substantial charitable works throughout his life, donated millions of dollars to charitable organizations and engaged in random acts of kindness. (ECF No. 313 at 7, 14-21). The government points to the text of § 5H1.11 which reflects that these considerations "are not ordinarily relevant" and argues that no defendant should be able to "buy his way out of just punishment." (ECF No. 314 at 12).

In *United States v. Kulick*, 629 F.3d 165 (3d Cir. 2010), the court commented that "the Guidelines actually discourage a district court from considering a defendant's charitable contributions." *Id.* at 176. A sentencing court is not forbidden from considering charitable contributions, but it must find this factor exists "to an exceptional degree." *Id.*

Nocito did not provide any evidence about his specific charitable contributions. Without the completed statement of Net Worth, the court is unable to evaluate whether the percentage of income Nocito devoted to charitable giving was extraordinary. On the record before it at this time, the court would need to conclude that Nocito's charitable contributions are not present to

11

an exceptional degree.

In sum, the court recognizes its discretion to grant a downward departure on the basis of his charitable works, but on the present record, the court's preliminary assessment is that the departure is not warranted. To the extent there is other evidence to the support Nocito's request, it may be presented at the sentencing hearing. In any event, the court will consider these facts in determining whether to grant a variance from the advisory guideline range.

Tentative Guideline calculation

In light of the United States Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005), the United States Sentencing Guidelines are advisory and no longer mandatory in the federal courts. The court is directed to sentence criminal defendants in accordance with the factors set forth in 18 U.S.C. § 3553(a). One of the factors enumerated in § 3553(a) that the court must consider is "the kinds of sentence and the sentencing range established for under the United States Sentencing Guidelines." 18 U.S.C. § 3553(a)(4). In fact, the United States Supreme Court stated that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 543 U.S. at 264. Accordingly, the court's tentative findings reflect the advisory Guidelines range for defendant's offense. At the time of sentencing, the court will impose the defendant's sentence in consideration of all the factors set forth in § 3553(a).

With respect to defendant's advisory Guidelines range, the court tentatively finds as follows:

**Offense Level**

1.	Base Offense Level: The guideline for this violation of 18 U.S.C. § 371 is U.S.S.G. §2T1.9. Under that guideline the base offense level is determined by assessing the tax loss and any other enhancements from U.S.S.G. §2T1.1 that apply to the defendant. As explained above, the tax loss is more than $9,500,000, which equates to an offense level of 26 using the tax table in U.S.S.G. §2T4.1. To that number, 2 levels are added under U.S.S.G. §2T1.1(b)(1) because the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity. To that number, 2 levels are added, per U.S.S.G. §2T1.1(b)(2), because the offense involved sophisticated means. Therefore, the total base offense level is 30. U.S.S.G. §§2T1.9(a)(1) and 2T1.1.

2.	Because the defendant recruited his personal assistant to pay his personal expenses with business funds by entering false entries in the business accounting records to disguise the true nature of the payments in exchange for wages and bonuses, 2 levels are added under the aggravating role provision. U.S.S.G. §3B1.1(c).

3.	Nocito demonstrated acceptance of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), his offense level is decreased by 2 points.

4.	Nocito assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Pursuant to U.S.S.G. § 3E1.1(b), Nocito's offense level is decreased by 1 additional point.

5.	Nocito's total offense level is **29**.

**Criminal History**

6.	Nocito's criminal history score is 0. According to the sentencing table in U.S.S.G.

Chapter 5, Part A, a criminal history score of 0 establishes a criminal history category of I.

**Imprisonment**

7.      The maximum term of imprisonment is 5 years. 18 U.S.C. § 371.

8.      Based upon a total offense level of 29 and a criminal history category of I, the guideline imprisonment range would be 87 to 108 months. However, because the statutorily authorized maximum term of imprisonment of 5 years (or 60 months) is less than the minimum of the applicable guideline range, the guideline term of imprisonment is 60 months. U.S.S.G. §5G1.1(a).

9.      The parties entered into a non-binding plea agreement with certain stipulations which result in a guideline imprisonment range different from that calculated by the court. Using the parties' stipulations, the defendant's corresponding guideline imprisonment range would be 37 to 46 months, based on an offense level of 21 and a criminal history score of I. As explained above, the court has determined to accept the parties' stipulations and to sentence the defendant based upon an advisory guideline range of 37 to 46 months.

**Supervised Release**

10.     The court may impose a term of supervised release of not more than 3 years. 18 U.S.C. § 3583(b)(2).

11.     Since the offense is a Class D Felony, the guideline range for a term of supervised release is 1 to 3 years. U.S.S.G. §5D1.2(a)(2).

**Probation**

12.     The defendant is eligible for not less than 1 nor more than 5 years of probation

because the offense is a Class D Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

13. Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation under the guidelines. U.S.S.G. §5B1.1, comment.(n.2).

**Fine**

14. The maximum fine is $250,000. 18 U.S.C. § 3571(b).

15. The fine range for this offense is from $30,000 to $250,000. U.S.S.G. §§5E1.2(c)(3) and (h)(1).

16. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013.

**Restitution**

17. Pursuant to 18 U.S.C. § 3663(a)(1)(A), and other provisions outlined in the plea agreement, the defendant shall pay restitution in the total amount of $15,824,056.00 to the Internal Revenue Service (IRS). Restitution is due and owing to the following victims: IRS-RACS Attention: Mail Stop 6261, Restitution 333 W. Pershing Avenue Kansas City, MO 64108.

18. Pursuant to PIR ¶ 51, defendant intends to pay the restitution amount in full by September 7, 2023.

**Forfeiture**

19. Forfeiture is not applicable.

By the court,

Date: September 7, 2023

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge