**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-35 |
| | ) | |
| Joseph W. Nocito, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

**I.      Introduction**

Pending before the court is a motion for early termination of supervised release filed by counsel on behalf of defendant Joseph W. Nocito ("Nocito") (ECF No. 351).  The government filed a response to the motion (ECF No. 355), and the probation office filed a "report on status" and a sealed recommendation to the court (ECF Nos. 353, 354).  The motion is ripe for decision.

**II.     Procedural History**

On November 17, 2022, Nocito pleaded guilty to count one of the indictment at Crim. No. 18-35, which charged him with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  In essence, Nocito committed a massive tax fraud in which he built a palatial home by falsely claiming the construction costs as business expenses.

Based upon a total offense level of 29 and a criminal history category of I, the guideline imprisonment range would have been 87 to 108 months. Because the statutorily authorized maximum term of imprisonment was 60 months, the applicable guideline range was 60 months. U.S.S.G. §5G1.1(a).

The parties entered into a non-binding plea agreement with certain stipulations which

resulted in a lower guideline imprisonment range. The court accepted the parties' stipulations and sentenced Nocito based upon an advisory guideline range of 37 to 46 months of imprisonment and 1 to 3 years of supervised release.

On September 15, 2023, the court sentenced Nocito to a term of imprisonment of 1 year and 1 day and a term of supervised release of 3 years, with the first 6 months on home detention. (ECF No. 324).  Nocito was ordered to pay the statutory maximum fine of $250,000 because he refused to provide information about his financial condition; and restitution in the amount of $15,824,056, which he paid in full prior to sentencing. The sentence represented a significant downward variance from the advisory guideline range (both as calculated in the presentence report and the stipulated variance range negotiated by the parties). No party appealed.

Nocito requested to self-report to prison and sought a date in January 2024 to enable him to undergo a knee replacement surgery. Nocito was permitted to self-report to prison.  Nocito was notified on November 2, 2023, that he was to report to FMC Lexington (a medical center) on January 22, 2024, to begin serving his period of incarceration.  On January 13, 2024, the court issued an opinion and order denying Nocito's motion to reduce his sentence and delay reporting to prison (ECF Nos. 348, 349).

Nocito began his term of supervised release on September 4, 2024.  It expires on September 3, 2027.  He has completed slightly over half his term of supervision.

**Discussion**

### A.  Applicable Law

A district court has the discretion to grant the early termination of a defendant's term of

supervised release[1] under 18 U.S.C. § 3583(e). United States v. Melvin, 978 F.3d 49, 52 (3d

Cir. 2020). Pursuant to § 3583(e):

> [t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—
>
> > (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). As specified in § 3583(e)(1), in exercising its discretion, the district

court must consider the following factors:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

"After considering these factors, the court may provide relief only if it is satisfied that early

termination is warranted by the defendant's conduct and is in the interest of justice." Melvin,

---

[1]     Supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)." Pepper v. United States, 562 U.S. 476, 502 n. 15 (2011). It "fulfills rehabilitative ends, distinct from those served by incarceration." United States v. Johnson, 529 U.S. 53, 59 (2000).

978 F.3d at 52. District courts need not make specific findings of fact with respect to each § 3553(a) factor; it is sufficient for the court to state that it considered the statutory factors.  Id. at 52-53.

The 2025 Sentencing Guidelines contain a new provision, §5D1.4(b), and comments with respect to early termination of supervised release:

> (b) Early Termination.--Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. 3583(e)(1).

U.S.S.G. § 5D1.4.

Comment 1(A) reflects that the "individualized assessment" under this section involves "the same factors used to determine whether to impose a term of supervised release."  Comment 1(B) outlines factors that the court "may wish to consider":

> (B) Early Termination.--When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:
>
> (i) any history of court-reported violations over the term of supervision;
> (ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
> (iii) the defendant's substantial compliance with all conditions of supervision;
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

4

U.S.S.G. § 5D1.4 (commentary).[2]

The official commentary to the 2025 amendments stated:

> *New §5D1.4 (Modification, Early Termination, and Extension of*
> *Supervised Release (Policy Statement))*
>
> The Commission sought to address with this amendment potential issues
> surrounding the fact that the terms and conditions of supervised release are imposed
> at original sentencing, often years before the defendant begins supervision. People
> and their circumstances may change in and after prison, such that the original term
> and conditions may no longer be appropriate after the defendant's release. Courts
> are encouraged to consider modifying the terms and conditions of supervised
> release whenever changed individual circumstances so warrant.

https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202505_Amendments.pdf at 53-54.

Prior to the recent guideline change noted above, the Third Circuit Court of Appeals

clarified that the *general rule* is that early termination of a term of supervised release under §

3583(e)(1) "will be proper 'only when the sentencing judge is satisfied that new or unforeseen

circumstances' warrant it." Melvin, 978 F.3d at 53 (quoting United States v. Davies, 746 F.

App'x 86, 89 (3d Cir. 2018), cert. denied, 139 S. Ct. 1275, 203 L. Ed. 2d 280 (2019)). The court

of appeals in Melvin explained:

> That is because, if a sentence was "sufficient, but not greater than necessary" when
> first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have
> changed in the interim that would justify an early end to a term of supervised
> release.

Id. The court of appeals, however, "disavow[ed] any suggestion that new or unforeseen

circumstances *must* be shown." Id. (emphasis added).[3] In other words, "a district court need not

---

[2]    The parties did not directly address each factor.  The court has considered the factors to the extent
the record enables it to do so.
[3]    The court of appeals explained that the language in United States v. Laine, 404 F. App'x 571,
573-74 (3d Cir. 2010), that "early termination of supervised release under section 3583(e) should occur
only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it," is not
based upon the statute and is not binding precedent.  Melvin, 2020 WL 6108619 at *3.

find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." Id. The district court must be "satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." Id. (quoting 18 U.S.C. § 3583(e)(1)).

In United States v. Newkirk, -- F.4th --, No. 25-1780, 2026 WL 1191839 (3d Cir. May 1, 2026), the Third Circuit Court of Appeals reemphasized the importance of the sentencing factors of avoidance of unwarranted disparities and general deterrence:

> A court's "failure to [place sufficient justifications on the record] in the face of a colorable argument that an outside-the-Guidelines sentence will create a risk of such disparities constitutes procedural error." *Id*. And a court's failure to "adequately address the impact its sentence would have on the deterrence of similar criminal conduct" is also procedural error.

*Id*. at *4. Newkirk involved an original sentence, but those sentencing factors are the same factors that the court must consider with respect to early termination of supervision.

The court will consider the pertinent factors set forth in § 3553(a) as instructed in § 3583(e)(1) and, to the extent the record before the court contains sufficient facts, the factors set forth in U.S.S.G. § 5D1.4(b) (a policy statement) to determine whether early termination of Nocito's term of supervised release is warranted by his conduct and is in the interest of justice.

### B. Section 3553(a) Factors

#### 1. The nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1)

Like at the time the offense was committed and at the time of sentencing, Nocito is a successful businessman and certified public accountant. He is not a flight risk or danger to the community. He has not had any violations while on supervision and demonstrates the ability to

lawfully conduct himself.  He is 84 years old and maintains an active business, which

necessitates out-of-state travel.

Nocito argues that he represents a low risk of recidivism due to his advanced age.

Nocito, however, committed his fraud crime while he was in his 70s.  The fraud was organized,

long-lasting and involved massive amounts of money.  Nocito demonstrably had the financial

capability to pay his rightful taxes, but consciously chose to engage in a fraudulent scheme.

Under those circumstances, despite Nocito's good conduct while on supervision, this

factor weighs in favor of completion of his term of supervised release.

> **2.   *The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, §§ 3553(a)(2)(B)-(D)***

In the original sentence, the court granted a large downward variance in the prison term,

in recognition of Nocito's age, health concerns, and his positive characteristics.  In combination

with the reduced prison time, the court imposed the high end of the guideline range of 3 years

supervision to reflect the serious nature of Nocito's criminal conduct and adequately deter

similar criminal conduct by him and others. Nocito has served about half the term of supervised

release imposed by the court.  A 3-year term of supervised release is still warranted to adequately

deter criminal conduct.

> **3.   *The sentencing range established by the Sentencing Commission, § 3553(a)(4)***

As noted above, the massive dollar amount of Nocito's fraud resulted in an advisory

guideline above the statutory maximum sentence.  The applicable guideline range for a term of

imprisonment became the statutory maximum of 60 months, although the court accepted the

parties' plea agreement and sentenced him based on an imprisonment range of  37-46 months.

The guideline for supervised release was 1-3 years. As noted above, the court granted a significant downward variance in Nocito's term of imprisonment and imposed a term of supervised release at the high end of the range.  Nocito would still be in prison if this court sentenced him at the guideline range.  This factor does not favor early termination of Nocito's supervision.

**4.   *Any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5).***

No pertinent policy statements were raised by the parties with respect to this matter.

**5.   *The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).***

To repeat, Nocito benefited from a significant downward variance in his term of imprisonment.  The court imposed a 3-year term of supervised release in connection with the downward variance in Nocito's prison term in the original sentence to satisfy the § 3553 factors. Early termination of the term of supervision may create an unwarranted sentencing disparity between Nocito and other defendants with similar records who have been found guilty of similar conduct.  This factor does not favor early termination of supervision.

**6.   *The need to provide restitution to any victims of the offense, § 3553(a)(7).***

Nocito made full restitution prior to his original sentence.  This factor is neutral.

### C.  Whether early termination is warranted and in the interest of justice

Nocito asserts that since his release from incarceration he is succeeding in the community and has remained crime free.  Nocito' probation officer and the government do not oppose this motion.  The court recognizes that Nocito successfully transitioned back into society.  The court reiterates that the original sentence reflected the need for general deterrence and the need to avoid unwarranted sentencing disparities, which remain significant factors.  *See Newkirk*.

Nocito's conduct on supervision is expected, but considering the foregoing § 3553(a) and U.S.S.G. § 5D1.4 analysis, especially the serious nature of his crime, and the need to deter criminal conduct, the interest of justice at this time is best served by Nocito completing his term of supervised release.

Nocito articulated one hardship posed by his current conditions of supervision relating to business travel, although he provided few specific details.  The conditions of Nocito's supervision will be revised to accommodate that business travel, as follows:

> Nocito need not seek preapproval from the probation officer for business travel **only**.  On the fifteenth day of each month, Nocito shall file a report with the probation officer of all business travel taken outside the Western District of Pennsylvania during the previous month, with sufficient information (as directed by the probation officer) to enable the probation officer to confirm that all unapproved travel was solely for business purposes.  Nocito must still obtain preapproval for all other travel outside the Western District of Pennsylvania.

If any other revisions of his conditions become necessary, Nocito should communicate with his probation officer to resolve that issue.  Nocito did not identify any such specific hardships in his current motion.

**III.    Conclusion**

Based upon the foregoing, the court will deny the motion for early termination of supervised release (ECF No. 351), albeit without prejudice to seek relief in the future if Nocito is able to identify how the factors identified in U.S.S.G. § 5D1.4 and § 3553 favor early termination of his supervised release.  The court will modify the condition with respect to business travel.

An appropriate order follows.

BY THE COURT:

Dated: June 3, 2026

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge